Opinion by Judge BYBEE; Dissent by Judge CALLAHAN
*843 OPINION
BYBEE, Circuit Judge:
In 2004, a Washington jury convicted Hoyt Crace of two misdemeanor offenses and one count of attempted second-degree assault — a felony — stemming from an incident in which he brandished a sword at a police officer. The attempted assault conviction constituted Crace’s third strike under Washington’s three-strikes law, and he received a life sentence without the possibility of parole.
After Crace’s conviction became final, he brought a claim for postconviction relief under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), arguing that his trial counsel was deficient for failing to request a jury instruction on “unlawful display of a weapon,” a lesser included offense of second degree assault. Had Crace been convicted of unlawful display of a weapon, rather than attempted second-degree assault, he would have avoided a third strike.
The Washington Supreme Court rejected Crace’s Strickland claim. The court held that, because Crace’s jury had found him guilty beyond a reasonable doubt of attempted second-degree assault, Strickland required a reviewing court to presume that the jury would have reached the same verdict even if instructed on a lesser offense. In light of that presumption, the court concluded that defense counsel’s failure to request a lesser-included-offense instruction caused no prejudice to Crace.
We hold- that the Washington Supreme Court’s decision was an unreasonable application of clearly established federal law under AEDPA and, on de novo review, we conclude that Crace’s claim of ineffective assistance of counsel warrants relief. We therefore affirm the district court’s judgment granting Crace’s petition for a writ of habeas corpus.
I
Hoyt Crace spent the morning of August 16, 2003, doing repairs to the windows of a mobile home owned by an acquaintance of his in Tacoma, Washington.[1] Crace was living in this trailer while its owner was away. Sometime around ten in the morning, a neighbor who lived in the same trailer park came by and asked Crace if he ever “g[o]t high”; Crace, who has a history of drug use, responded that he did. The two began drinking together and, over the next several hours, Crace consumed eight to ten alcoholic coolers, roughly a gram of cocaine, two painkillers, and a “quarter piece” of heroin. Around one[1] or two in the afternoon, the neighbor departed. Crace lay down to watch a video and soon fell asleep.
Crace awoke around 2:00 a.m. in a panicked state. He was “hearing voices and seeing things” and felt that someone or something was “going to brutally murder” him and that he needed to escape. He left the trailer where he was staying in an attempt to locate the trailer of two women whom he knew, where he hoped to find “safe haven” from his pursuers.
Crace mistakenly entered the trailer of a neighbor, Rita Whitten. After screaming and then rifling through Whitten’s kitchen cabinets, he ran back outside. Crace eventually made his way back to the trailer where he was staying; he went inside, grabbed a sword off of the wall, and began running down the street, screaming for help.
*844 Theron Hardesty, a Pierce County sheriffs deputy, arrived at the trailer park around 2:30 a.m. after receiving a call regarding a potential burglary. A resident informed Hardesty that a man armed with a sword was at large in the trailer park. Hardesty quickly located Crace, who was jumping up and down in the middle of the street and screaming.
Crace saw Hardesty’s flashlight beam and, although he could not tell who was holding the flashlight, began running towards it, “trying to find somebody to be around” for protection. As Crace approached, Hardesty drew his handgun and ordered Crace to drop the sword. Crace did not comply immediately, but when he got within about 50 feet away from Hardesty, he realized Hardesty was a police officer and dropped the sword.
Hardesty then ordered Crace to get down on the ground. Crace continued to run toward Hardesty, however, because he feared that if he were to lie down in the middle of the street, he would be killed. Crace ran until he was about seven feet from Hardesty, at which point he complied with Hardesty’s orders and got down on the ground.
Hardesty put Crace in handcuffs, placed him in the back of his patrol car, and went to interview Rita Whitten. During the interview, Hardesty heard bystanders “screaming” in the parking lot, and he returned to find that Crace had kicked out the left rear window of the car. Crace was terrified at haring been left alone and had kicked out the window in a desperate attempt to get Hardesty to return. Several additional deputies arrived soon after-wards and helped restrain Crace. Hardesty read Crace his Miranda rights, and Crace told him that he had been chased by “four or five” pursuers. Hardesty determined that Crace was “obviously on some type of street drug.”
Crace was subsequently charged with first-degree criminal trespass, second-degree malicious mischief, and second-degree assault. The trial court ordered an evaluation of Crace’s competency to stand trial, and two psychologists — one employed by the state and one by the defense — examined Crace. The court found Crace competent, and the case proceeded to trial. Crace’s theory of defense at trial was that he suffered from diminished capacity on the night of August 16 due to the influence of the alqohol and drugs he had consumed, leaving him unable to form the intent required for any of the charged offenses.
After the close of the evidence, the trial court instructed the jury on the three charged offenses and on attempted second-degree assault, a lesser included offense of second-degree assault. The jury deadlocked on the second-degree assault charge, but it convicted Crace of attempt-' ed second-degree assault. It also convicted on first-degree criminal trespass and second-degree malicious mischief. The latter two offenses are misdemeanors, but the attempted second-degree assault conviction — a felony — counted as Crace’s third strike under Washington’s three-strikes law. Crace received a life sentence without the possibility of parole for that offense.
After the Washington courts affirmed his conviction on direct appeal, Crace filed a “personal restraint petition” with the Washington Court of Appeals, alleging, among other things, that his trial attorney was ineffective for failing to request a jury instruction on “unlawful display of a weapon,” which is another lesser included offense of second-degree assault.[2] A conric *845 tion for unlawful display of a weapon, which is a misdemeanor, would not have resulted in Crace’s receiving a third strike.
The Court of Appeals initially denied Crace’s personal restraint petition in an unpublished opinion. Crace moved for reconsideration, and the court, in a divided opinion, granted that motion and subsequently issued a new decision granting Crace’s petition. In re Crace, 157 Wash.App. 81, 236 P.3d 914 (2010), rev’d, 174 Wash.2d 835, 280 P.3d 1102 (2012). The court applied Strickland’s test for ineffective assistance of counsel and held that Crace had satisfied both prongs of that test. First, the court held that Crace’s trial counsel had performed deficiently by failing to request an instruction on unlawful display of a weapon, given that a conviction for that offense rather than for attempted assault would have saved Crace from a third strike and a life sentence. Id. at 930-31. Second, it held that Crace had shown that he was prejudiced by his counsel’s failure because, under Washington law, Crace would have been entitled to an instruction on the offense of unlawful display of a weapon if his attorney had requested it, and there was a reasonable probability that the outcome of the trial would have been different if that additional instruction had been given. Id. at 931-33.
The state appealed, and the Washington Supreme Court reversed by a vote of 7-2. In re Crace, 280 P.3d at 1102. The high court did not decide whether Crace’s attorney’s performance was deficient because it determined that Crace could not satisfy Strickland’s prejudice prong. The court explained that, when reviewing a claim of ineffective assistance of counsel, it was required to “assume that the jury would not have convicted the defendant unless the State had met its burden of proof’ and that “the availability of a compromise verdict [thus] would not have changed the outcome of the trial.” Id. at 1109. The court determined that, “in light of’ these presumptions and of the fact that there was sufficient evidence to support the jury’s verdict, it could not “say in all reasonable probability that counsel’s error ... contributed to Crace’s conviction on attempted second degree assault.” Id.
Crace next filed a habeas corpus petition in the Western District of Washington. A magistrate judge of that court recommended granting Crace’s petition. The magistrate judge agreed with the Washington Court of Appeals’ conclusion that Crace’s attorney’s performance had been deficient. Turning to the issue of prejudice, she explained that the Washington Supreme Court’s prejudice analysis involved an “incomplete and unreasonable application of Strickland.” She explained that the Washington Supreme Court had “completely avoided the [prejudice] prong of Strickland rather than analyzing “what difference an instruction on the lesser crime of unlawful display of a weapon would have had on the outcome of’ the trial, the Washington Supreme Court had simply assumed that such an instruction would have made no difference. The magistrate judge noted that, under such an approach, “no defendant could ever show prejudice when counsel failed to offer a lesser included offense instruction,” as long as sufficient evidence supported the jury’s verdict. On de novo review, she concluded that Crace had shown that he was prejudiced by his attorney’s failure and recommended granting relief.
*846 In a separate opinion resting on the same reasoning, the district court adopted the magistrate judge’s Report and Recommendation and granted Crace’s habeas corpus petition. This appeal followed.
II
We review the district court’s order granting a writ of habeas corpus de novo. Merolillo v. Yates, 663 F.3d 444, 453 (9th Cir.2011). Our review of the Washington Supreme Court’s decision, however, is constrained by AEDPA; we must defer to that decision unless it was “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). If we determine that “the requirements of AEDPA have been met, we must also determine, applying a de novo review standard, [that] there has been a constitutional violation” before we may grant habeas corpus relief. See Butler v. Curry, 528 F.3d 624, 641 (9th Cir.2008).
in
The “clearly established” Supreme Court law at issue in this case is Strickland v. Washington, in which the Court held that a claim of ineffective assistance of counsel has “two components”: First, a defendant must show that his attorney’s performance was “deficient,” in that it “fell below an objective standard of reasonableness.” Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. Second, he must show that he was prejudiced by his attorney’s actions or omissions, by demonstrating that there is a “reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694,104 S.Ct. 2052.
We analyze the question of prejudice first, since it is the only prong of Strickland that the Washington Supreme Court addressed.
A. AEDPA Review of the Washington Supreme Court’s Prejudice Determination
The Washington Supreme Court’s conclusion that Crace’s attorney’s failure to request an instruction on unlawful display of a weapon did not prejudice Crace was based on the court’s holding in an earlier case, State v. Grier, 171 Wash.2d 17, 246 P.3d 1260 (2011). In Grier, a defendant convicted of second-degree murder argued on appeal that her trial' counsel had been ineffective by failing to request a jury instruction on the lesser included offense of manslaughter! Id. at 1266. The court rejected this claim on the grounds that the defendant could not show any prejudice caused by her attorney’s failure. Id. at 1274.
The Grier court quoted Strickland for the proposition that, when analyzing prejudice, a reviewing court “should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.” Id. at 1272 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). The court interpreted this language to mean that it was required to presume that the defendant’s jury had convicted her of murder because the jury found that the elements of murder had been proved beyond a reasonable doubt. The court then concluded that, given that presumption, it could also assume that “the availability of a compromise verdict would not have changed the outcome” of the trial, id. at 1274; if the jury had thought the defendant guilty of murder beyond a reasonable doubt, it necessarily would have reached the same verdict even if it had been instructed on lesser included offenses.
*847 In Crace’s case, the Washington Supreme Court applied both of the presumptions “recognized in Grier.” It first presumed that Crace’s jury must have found that each of the elements of attempted second-degree assault had been proved beyond a reasonable doubt when it convicted him. It then determined that the evidence was sufficient to support such a verdict and presumed, on that basis, that an instruction on the lesser included offense of unlawful display of a weapon would have made no difference to the outcome of the trial; the jury would still have convicted Crace of attempted second-degree assault even if it had been instructed on another lesser included offense.
The Washington Supreme Court’s methodology is a patently unreasonable application of Strickland, and its decision in this case is thus unworthy of deference under AEDPA. Strickland did instruct reviewing courts to presume that trial juries act “according to law,” but the Washington Supreme Court (both in Grier and in this case) has read far more into that instruction than it fairly supports and, as a result, has sanctioned an approach to Strickland that sidesteps the reasonable-probability analysis that Strickland’s prejudice prong explicitly requires.
In counseling reviewing courts to presume that juries act according to law, the Strickland Court sought to prohibit lower courts from basing findings of prejudice on the possibility of freak acts of “lawless[ness]” by judges and juries that are outside the ordinary course of criminal justice. The passage immediately following the language quoted in Grier explains this point:
An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, “nullification,” and the like. A defendant has no entitlement to the luck of a lawless decision-maker, even if a lawless decision cannot be reviewed.
466 U.S. at 695, 104 S.Ct. 2052. In other words, a court may not find Strickland prejudice by concluding that a different choice of tactics by defense counsel could have persuaded the judge or jury to make an arbitrary and improper decision in the defendant’s favor. Rather, “[t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.” Id.
The Washington Supreme Court’s decisions in Grier and in this case overextended the foregoing principle. That principle forbids a reviewing court from finding prejudice by speculating that, if the defendant is permitted to roll the dice again, the jury might convict on a lesser included offense merely as a means of jury nullification, without regard for whether that verdict is consistent with the evidence. But it does not require a court to presume — -as the Washington Supreme Court did — that, because a jury convicted the defendant of a particular offense at trial, the jury could not have convicted the defendant on a lesser included offense based upon evidence that was consistent with the elements of both. To think that a jury, if presented with the option, might have convicted on a lesser included offense is not to suggest that the jury would have ignored its instructions. On the contrary, it would be perfectly consistent with those instructions for the jury to conclude that the evidence presented was a better fit for the lesser included offense. The Washington Supreme Court thus was wrong to assume that, because there was sufficient evidence to support the original verdict, the jury necessarily would have reached the same *848 verdict even if instructed on an additional lesser included offense.
As the Supreme Court has recognized in a related context, a jury presented with only two options — convicting on a single charged offense or acquitting the defendant altogether — “is likely to resolve its doubts in favor of conviction” even if it has reservations about one of the elements of the charged offense, on the thinking that “the defendant is plainly guilty of some offense.” Keeble v. United States, 412 U.S. 205, 212-13, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973) (construing the Major Crimes Act of 1885 not to preclude lesser-included-offense instructions, in order to avoid constitutional concerns); see also Hopper v. Evans, 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). It is therefore perfectly plausible that a jury that convicted on a particular offense at trial did so despite doubts about the proof of that offense — doubts that, with “the availability of a third option,” could have led it to convict on a lesser included offense. See Keeble, 412 U.S. at 213, 93 S.Ct. 1993. Making this observation does not require us to speculate that the jury would have acted “lawlessly]” if instructed on an additional, lesser included offense or to question the validity of the actual verdict. Rather, it merely involves acknowledging that the jury could “rationally” have found conviction on a lesser included offense to be the verdict best supported by the evidence. See id.
In Grier (and, implicitly, in this ease), the Washington Supreme Court brushed Keeble aside as “inapposite in the context of ineffective assistance of counsel.” Grier, 246 P.3d at 1272. In that court’s view, applying Keeble’s reasoning in a Strickland case requires a court to posit that “the jury would not hold the State to its burden in the absence of a lesser included offense instruction” — the kind of jury “lawless[ness]” that Strickland precludes a court from considering. Id. Not so. Keeble’s logic does not rest on the proposition that juries deliberately and improperly choose to convict in the absence of reasonable doubt. What Keeble teaches us is that a lesser-included-offense instruction can affect a jury’s perception of reasonable doubt: the same scrupulous and conscientious jury that convicts on a greater offense when that offense is the only one available could decide to convict on a lesser included offense if given more choices.[3]
*849 Nothing in Strickland, therefore, forbids courts from considering the possibility that a jury would have convicted on a lesser included offense if given the option to do so. Indeed, just the opposite is true: in ineffective-assistance cases involving a failure to request a lesser-included-offense instruction, Strickland requires a reviewing court to assess the likelihood that the defendant’s jury would have convicted only on the lesser included offense. Cf Keeble, 412 U.S. at 213, 93 S.Ct. 1993 (“We cannot say that the availability of a third option ... could not have resulted in a different verdict.”). Only by performing that assessment can a court answer the question expressly posed by Strickland: whether there is a reasonable probability that, if the defendant’s lawyer had performed adequately, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694,104 S.Ct. 2052.[4]
The Washington Supreme Court in essence converted Strickland’s prejudice inquiry into a sufficiency-of-the-evidence question — an entirely different inquiry separately prescribed by Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This is so because, under the Washington Supreme Court’s approach, a defendant can only show Strickland prejudice when the evidence is insufficient to support the jury’s verdict — a circumstance in which the defendant does not need to rely on Strickland at all because Jackson already provides a basis for habeas relief. See id. (a petitioner “is entitled to habeas corpus relief if it is found that upon the record- evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt”). And conversely, if the evidence is sufficient to support the verdict, there is categorically no Strickland error, according to the Washington Supreme Court’s logic. By reducing the question to sufficiency of the evidence, the Washington Supreme Court has focused on the wrong question here — one that has nothing to do with Strickland.
In the only other reported court of appeals decision on this issue that we have found, the Third Circuit came to the same conclusion that we do. Breakiron v. Horn, 642 F.3d 126 (3d Cir.2011). In that case, a defendant convicted of robbery raised an ineffective-assistance-of-counsel claim based on his attorney’s failure to request an instruction on the lesser included offense of theft. Id. at 136. The Pennsylvania Supreme Court rejected that claim, reasoning that no prejudice occurred because sufficient evidence supported the jury’s conviction on the robbery charge. Id. at 139. The Third Circuit held that this decision was an unreasonable application of Strickland, explaining that Strickland required a court to “weigh all the evidence of record ... to determine whether there was a reasonable probability that the jury would have convicted [the defendant] only of theft if it had been given that option. Merely noting that the evidence was sufficient to convict does not accomplish that task.” Id. at 140.
So too here. By pronouncing as a matter of law that, as long as there is sufficient evidence to support the jury’s verdict, no prejudice results from a defense attorney’s failure to request a lesser-included-offense instruction, the Washington Supreme Court has licensed Washington courts to avoid analyzing prejudice in the *850 way that Strickland requires.[5] This approach to Strickland is not merely wrong, but “objectively unreasonable” under AEDPA.
B. De Novo Prejudice Analysis
Having determined that the Washington Supreme Court’s decision on prejudice should receive no AEDPA deference, we consider the issue of prejudice de novo.
We note, first, that Crace was legally entitled to a lesser-included-offense instruction on unlawful display of a weapon. Under Washington law, “a defendant is entitled to an instruction on a lesser included offense if two conditions are met. First, each of the elements of the lesser offense must be a necessary element of the offense charged.” State v. Workman, 90 Wash.2d 448, 584 P.2d 382, 385 (1978). Second, “the evidence must raise an inference that only the lesser included/inferior degree offense was committed to the exclusion of the charged offense.” State v. Fernandez-Medina, 141 Wash.2d 448, 6 P.3d 1150, 1154 (2000).
Both of these requireménts are satisfied here. The Washington courts have held that every element of unlawful display of a weapon is a necessary element of second-degree assault. State v. Ward, 125 Wash.App. 243, 104 P.3d 670, 672 (2004), abrogated on other grounds by Grier, 246 P.3d at 1271. And as the Washington Court of Appeals concluded, there was evidence to “support an inference that Crace only displayed the sword and that he had no intent to create reasonable fear or apprehension of bodily injury,” which is the specific intent required for assault and attempted assault.
Crace testified that, when he grabbed his sword and ran out into the street, he had no intent to harm anyone, but simply was “scared” and “wanted people to come out.” Crace’s actions when Deputy Hardesty arrived on the scene did not clearly suggest that he intended to harm or frighten Hardesty, and Crace testified that he lacked such intent. Crace also presented testimony by a psychologist, Dr. Vincent Gollogly, who explained that Crace’s mental capacity hád been so impaired on the night of August 16 that he was not “able to realize the nature of what he was doing.” Dr. Gollogly acknowledged that some of Crace’s actions could be described as purposeful, but he explained that Crace’s actions were not intentional because Crace had been in the throes of a “substance induced psychotic disorder” that affected his perceptions and prevented him from forming criminal intent.[6] Hardesty’s testimony that it was “obvious[]” that Crace was under the influence of drugs that night provided support for Dr. Gollogly’s assessment.
Based on Dr. Gollogly’s opinion and the testimony of Crace and Hardesty, a jury could rationally choose to convict Crace *851 only of unlawful display of a weapon. Indeed, that offense appears to be tailor-made to apply to Crace’s conduct as he and Dr. Gollogly described it. See Wash. Rev.Code § 9.41.270(1) (prohibiting “carrying] ... any ... sword ... in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons” (emphasis added)).
Because both factors of the Washington test are satisfied, the trial court would have been obligated to instruct the jury on the lesser included offense of unlawful display of a weapon if Crace’s counsel had requested such an instruction. And had that instruction been given, there is a reasonable probability that the jury would have convicted Crace only of that offense. As we have explained, the evidence could well have led Crace’s jury to question whether he acted with the specific intent required for attempted second-degree assault — the only lesser included offense of second-degree assault on which the jury was instructed and the only felony of which Crace was convicted. See Wash. Rev.Code §§ 9A.28.020(1), 9A.36.021(1). At trial, however, the jury’s only option short of convicting on attempted assault was to acquit Crace outright. The fact that the jury “resolve[d] its doubts in favor of conviction” on attempted assault, rather than in favor of .acquittal, does not imply that it was firmly convinced of Crace’s capacity to form criminal intent. See Keeble, 412 U.S. at 212-13, 93 S.Ct. 1993.
We think it reasonably probable that, if given an additional option, the jury would have convicted Crace only of unlawful display of a weapon — which, unlike assault and attempted assault, has no intent requirement.[7] See Wash. Rev.Code § 9.41.270. This probability is “sufficient to undermine [óur] confidence in the outcome” of the trial and satisfies the prejudice prong of Strickland, 466 U.S. at 694, 104 S.Ct. 2052.[8]
*852 IV
It remains for us to decide whether Crace’s attorney’s failure to request the lesser-included-offense instruction constituted deficient performance under Strickland. Because the Washington Supreme Court explicitly declined to reach this issue, we review it de novo. See, e.g., Rompilla v. Beard, 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir.2006). We conclude that Crace’s attorney’s performance was clearly deficient.
We are mindful that judicial review of an attorney’s performance under Strickland must ordinarily be “highly deferential” and incorporate a “strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance which, under the circumstances, might be considered sound trial strategy.” United States v. Span, 75 F.3d 1383, 1387 (9th Cir.1996). A trial attorney’s failure to request a jury instruction receives no deference, however, when it is based on “a misunderstanding of the law” rather than “a strategic decision to for[]go one defense in favor of another.” See id. at 1390; accord Richards v. Quarterman, 566 F.3d 553, 569 (5th Cir.2009) (finding ineffective assistance of counsel based on failure to request lesser-included-offense instruction, where such failure was “deficient and not a strategic decision”); United States v. Alferahin, 433 F.3d 1148, 1161 (9th Cir.2006) (holding that trial counsel was deficient, where he “did not intend strategically to for[ ]go [a] materiality instruction” but rather “had no idea that such an instruction was available to his client as a matter of right”); United States ex rel. Barnard v. Lane, 819 F.2d 798, 805 (7th Cir.1987) (holding that failure to request an instruction on a lesser included offense constituted deficient performance, where such failure was not within the “spectrum of counsel’s legitimate tactical choices”).
Crace’s attorney’s failure to request the instruction was neither strategic nor deliberate. In a declaration submitted to the Washington Supreme Court, he explicitly stated that the “only reason [he] did not offer a lesser included instruction for unlawful display of a weapon was because [he] did not consider it.” The Washington Supreme Court did not consider this declaration because it did not reach the performance prong of Strickland, but the declaration is properly before us and the state has made no attempt to dispute its assertions. We therefore conclude that Crace’s counsel made no strategic decision to forgo a lesser included offense instruction that commands our deference, and we hold that his outright failure even to consider the possibility of requesting a lesser included offense constituted deficient performance.
Indeed, we would find that Crace’s attorney’s actions were manifestly unreasonable even if we thought that he had consciously chosen not to request the instruction. In certain circumstances, it may be reasonable for a defense attorney to opt for an “all-or-nothing” strategy, forcing the jury to choose between convicting on a severe offense and acquitting the. defendant altogether. But once the trial court decided to instruct the jury on one lesser included offense — i.e., attempted second-degree assault — there was no longer any conceivable reason for Crace’s counsel not to request an instruction on a second lesser included offense. An all-or-nothing strategy was also clearly inappro *853 priate in this case, given that a conviction only for unlawful display of a weapon would have spared Crace a third strike and thus decades of prison time.
We conclude that Crace’s attorney’s performance “fell below an objective standard of reasonableness.” Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. Because Crace has satisfied both prongs of Strickland, his conviction for attempted second-degree assault cannot stand.
V
We hold that the Washington Supreme Court’s application of Strickland was objectively unreasonable, which removes its decision from the protection of AEDPA. We also conclude, on de novo review, that Crace’s claim of ineffective assistance of counsel merits habeas corpus relief. We therefore affirm the judgment of the district court.
AFFIRMED.

. We take this narrative from the various witnesses, including Crace, who testified at trial. Our account derives from the testimony offered that the jury might have credited. We do not adopt any particular theory of what, in fact, occurred.

. A person commits the offense of unlawful display of a weapon by ''carryfing]” or "dis *845 play[ing] ... any firearm, dagger, sword, knife or other ... weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.” Wash. Rev.Code § 9.41.270(1) (emphasis added).

. The dissent is thus mistaken in claiming that "there is some tension” between Strickland and Keeble and that fairminded jurists could reasonably "resolve! ]” this tension "in favor of Strickland.” Dissenting Op. at 856-58 (citing Harrington v. Richter, 562 U.S. 86, 103, 105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)). Properly understood, Strickland and Keeble are entirely harmonious: Strickland requires courts to presume that juries follow the law, and Keeble acknowledges that a jury — even one following the law to the letter — might reach a different verdict when presented with additional options.
Our conviction on this point is not shaken by the dissent's observation that sixteen state-court judges, including the eight Washington judges who ruled against Crace at various stages below, have agreed with its view of Strickland and Keeble. Id. at 858 n. 8. Although we do not impugn either the character or the abilities of those judges, their rulings do not automatically establish that "fairminded disagreement” on this question is possible. The assessment of whether a question admits of fairminded disagreement among jurists is not simply a matter of counting noses; after all, in every-federal habeas corpus case, there must be at least a few state-court judges who have decided an issue adversely to the petitioner in order for the case to come before us. Rather, a federal habeas court must decide whether the applicable Supreme Court law leaves the issue raised by the petitioner open or resolves it conclusively. We hold that Strickland and Keeble demonstrate beyond doubt that the Washington Supreme Court's decision was wrong and that the requirements of AEDPA have therefore been met.

. Nothing we have said here affects a defense attorney's ability to make a strategic decision to forgo a lesser-included-offense instruction in order to force the jury into an "all-or-nothing” decision. The reasonableness of that decision would be examined under the performance prong of Strickland.

. The dissent notes that the Washington court recited the proper Strickland test’before applying it. Dissent at 859-60. But the court’s application of the law — not its recitation of the legal standard' — is what we hold to be objectively unreasonable. The dissent also argues that we should presume the state court did not err in applying clearly established ' law. Id. at 860. While we agree with this general proposition, a presumption cannot save the Washington court’s patently unreasonable application of the law here.

. Dr. Steven Marquez, the state’s psychologist, took the opposite position, testifying that Crace showed an ability to engage in “goal-directed” behavior at the time of his arrest and that he believed that Crace was a malingerer whose account of his own mental state was not completely credible. This testimony, although in conflict with Dr. Gollogly’s, does nothing to alter our conclusion that there is at least a reasonable probability that the jury would have convicted Crace only of unlawful display of a weapon.

. Contrary to the dissent’s suggestion, Dissenting Op. at 862, our prejudice analysis does not depend in any way on the assumption that the jury knew about the sentencing consequences of the various possible verdicts. We refer to the sentencing consequences of the different charges only in connection with our conclusion that Crace’s attorney — who, unlike the jury, either knew or should have known about the implications of the charges under Washington’s three-strikes law — performed deficiently by failing to request an instruction on unlawful display of a weapon. See Part IV, infra.

. The dissent argues that Schad v. Arizona, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), compels a contrary conclusion. Dissenting Op. at 860-62. In Schad, the Supreme Court held that no due process violation occurred at a murder trial where the defendant’s jury was instructed on both first- and second-degree murder but was not instructed on the lesser included offense of robbery. (The defendant was convicted of first-degree murder). Schad, 501 U.S. at 648, 111 S.Ct. 2491. The Court explained that because the juiy had been instructed on one lesser included offense — second-degree murder — it had not been presented with an all-or-nothing choice between conviction on first-degree murder and acquittal. Thus, the due process rule of Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), which requires that a jury in a capital case be instructed on a lesser included noncapital offense that is supported by the evidence, was inapplicable. Schad, 501 U.S. at 645-48, 111 S.Ct. 2491.
We do not agree with the dissent that Schad — which simply held that, where one lesser included offense instruction has been given, a court need not take the drastic step of vacating a conviction under Beck — establishes that a conviction is per se "reliable” as long as one lesser included offense instruction was given. Moreover, even if the dissent is right that, under Schad’s logic, Crace’s conviction is marginally more "reliable” because a lesser included instruction on attempted assault was given at his trial, Dissenting Op. at 861, there remains a reasonable probability that Crace's *852 jury would have convicted him only of unlawful display of a weapon if instructed on that offense. That probability establishes that Crace was prejudiced by his attorney's failure to request such an instruction. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052.