IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34347-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID STEWART LEWIS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — We revisit a common appellate question: whether a defense

attorney's failure to request a lesser included offense jury instruction constituted

ineffective assistance of counsel. David Lewis appeals from two convictions of second

degree burglary. He argues his attorney erred when not seeking a lesser included offense

jury instruction for criminal trespass for the two counts. We decline to address whether

the attorney performed deficiently, because we find no prejudice. We therefore affirm

Lewis' conviction. We modify, however, a portion of his sentence.

FACTS

We appropriate our facts from testimony during a jury trial. The charges against

David Lewis surrounded his surreptitious entries into the Ephrata Athletic Club and his

misconduct inside the club on December 18 and December 19, 2015.

In early 2014, Mike Scellick, owner and operator of the Ephrata Athletic Club, terminated the club membership of David Lewis for failure to pay monthly membership dues. Scellick has not since invited Lewis to the club. Scellick also contacted the Ephrata Police Department to request a law enforcement officer inform Lewis that he no longer held membership in the club and was no longer allowed inside the club building. In March 2014, Ephrata Police Officer Billy Roberts dutifully informed Lewis that police would arrest him if he returned to the Ephrata Athletic Club. Months later David Lewis returned.

An Ephrata Athletic Club member may enter the club's facility through one of two side doors or by signing one's name at the club's front desk. A member enters a side door by entering a five-digit code. Twelve security cameras monitor club entrances and interior rooms other than locker rooms.

On December 18, 2015, club member Roger Holloway arrived at the Ephrata Athletic Club at 7:00 a.m. for his usual exercise routine. Holloway did not rent a locker at the club, so he left his street clothes hanging on a hook for nigh an hour in the men's locker room.

On December 18, 2015, at 7:37 in the morning, a security camera captured an Ephrata Athletic Club member exiting the club building through a side door after leaving the men's locker room. As the member exited the building, someone grabbed the door before it fastened from the outside, and the someone hastily moved from the entryway to

2

inside the men's locker room. The darting someone appeared to be male and wore a distinctive black and blue jacket with a white zigzag pattern. Just over five minutes later the someone exited the locker room and building while shielding his face, with his right hand, from the security camera. The someone did not look to hold or hide any object beneath his jacket.

Meanwhile Roger Holloway exercised and enjoyed the Ephrata Athletic Club hot tub. Upon returning to the men's locker room, Holloway discovered a pocket knife, fingernail clippers, and over $100 missing from his pants pockets. Holloway reported, to club manager Mike Scellick, his missing items as stolen property. Holloway never thereafter recovered his clippers, knife, or cash.

In the early afternoon of the next day, December 19, 2015, club member John Ergler interrupted a workout at the Ephrata Athletic Club and returned to the men's locker room. Ergler observed, inside the room, David Lewis, donned in street clothes and without a gym bag, sitting on a bench. Ergler left the locker room to exercise again. He returned to the locker room once more to gather money, for the club's tanning salon, from his jeans hanging on a locker room hook. Ergler then noticed Lewis sitting on a bench outside the locker room. Once inside the room, Ergler found his pants ruffled and the money in his jeans pocket missing. Ergler reported a theft to a club employee.

Shortly after being informed by an Ephrata Athletic Club employee of John Ergler's misfortune, Mike Scellick perused security footage spanning the time Ergler

3

used the club's exercise facilities on December 19. The video depicted David Lewis, wearing a black and blue jacket with a white zigzag stripe, entering the club after 1:00 p.m. and ambulating to the locker room. Lewis left the locker room less than four minutes later wearing a different jacket. A lump bulged from the side of the unzipped replacement coat.

At 6:36 p.m., on December 19, 2015, Ephrata Athletic Club member Harold Franks arrived at the club. As Franks entered a side doorway, David Lewis followed him into the club building. Lewis wore the same black and blue jacket with a white zigzag stripe. Franks had known Lewis since 1998 when Lewis' father coached Franks' daughter's soccer team.

Harold Franks and David Lewis, while captured on the Ephrata Athletic Club security footage, engaged in a brief conversation. Franks told Lewis that Lewis could not enter the club because of his lack of membership. Lewis responded that he intended to meet a friend, bearing the Christian name Ohl, inside the club. Franks, unfamiliar with the surname Ohl, bade Lewis to wait outside the club until the friend arrived. Lewis reacted by skirting into a locker room toilet stall, where he locked the door. Franks told Lewis three times, from outside the stall door, to vacate the club. Each time, Lewis replied that his friend would arrive soon. Franks exited the locker room and lounged for twenty minutes in the hot tub. Upon Franks' return to the locker room, he discovered Lewis still inside the restroom stall with the door locked. Franks, after unsuccessfully

4

seeking the phone number of Mike Scellick, phoned the Ephrata Police Department to report Lewis' actions. Franks waited in the parking lot for police to arrive.

Ephrata Police Officer Billy Roberts, who a year earlier instructed David Lewis not to enter the Ephrata Athletic Club, and Sergeant Troy Froewiss responded to Harold Franks' call. When the two officers arrived at the club, Franks told Officer Roberts that he last saw David Lewis inside the locker room. Officer Roberts and Sergeant Froewiss entered the club, and, as Roberts opened the door to the locker room, he nearly collided with Lewis as Lewis attempted to exit the club. Lewis held a pair of Brooks Beast athletic shoes, Nike Air Max athletic shoes, a pair of old, dirty, cold and damp white tennis shoes, a large black, green, and purple coat and a Lawman coat. Lewis told Officer Roberts that, on previous occasions, he entered the Ephrata Athletic Club to avoid the weather.

## PROCEDURE

The State of Washington charged David Lewis with three counts of second degree burglary. The first count covered Lewis' entry into the Ephrata Athletic Club on December 18, 2015. The second and third counts respectively covered his afternoon and evening accesses into the club on December 19, 2015. We need to carefully distinguish between the three burglary counts in our decision. The State also charged Lewis with two counts of third degree theft: one for items taken from Roger Holloway on December 18 and the other for cash taken from John Ergler in the afternoon of December 19. The

5

No. 34347-2-III
*State v. Lewis*

State elected not to charge Lewis for the theft of the athletic shoes or jackets during his entrance to the club on the evening of December 19.

After the start of the trial and in the jury's absence, the State informed the court:

> I anticipate that there will be a request for a lesser included [jury instruction allowing the jury to convict David Lewis for criminal trespass rather than second degree burglary with regard to the entry on December 18].
>
> I don't think there is a legally sufficient basis for a lesser included, at least for counts two and three [occurring on December 19]. Because in two [the first entry on December 19] you can clearly see that there's something under the coat, and in three [the second entry on December 19], he's got the—he's got the shoes in his hands. One, I would dispute whether there is a sufficiency for lesser included, but I'll have that—I will try to be prepared for that.

Report of Proceedings (RP) at 134. Defense counsel responded by stating that he would discuss with his client whether to request a lesser included jury instruction and, if the defense requested an instruction, the defense would probably request the instruction for all three charges of burglary.

On the morning of the second day of trial, the State's counsel and the trial court, in the presence of David Lewis and his counsel, engaged in the following exchange:

> [STATE'S COUNSEL]: . . . I was able to speak to [defense counsel] and we have incorporated a lesser included for count one, the burglary occurring on December 18th.
> THE COURT: Okay.
> [STATE'S COUNSEL]: And have incorporated that instruction.
> Additionally, I had e-mailed a proposed instruction to [defense counsel] last night. With the court's permission, I'll approach.
> THE COURT: Sure.

6

[STATE'S COUNSEL]: And I would include this in the packet. Mr. Gonzales seemed to be all right with that.

THE COURT: Okay. It sounds like you guys have jury instructions basically agreed to almost.

[STATE'S COUNSEL]: I don't think there's anything all that controversial.

RP at 141-42. Defense counsel did not thereafter request lesser included jury instructions for the remaining two burglary counts and registered no objection to the lack of lesser included instructions for counts two and three. The trial court gave a lesser included criminal trespass instruction only for the Ephrata Athletic Club entry on December 18.

During a brief closing argument, defense counsel remarked, in part:

There's no real question he [David Lewis] was there [in the Ephrata Athletic Club]. None. He was there without permission. No real question there. He's guilty of criminal trespass. There's no official evidence that he took anything. No forensic evidence he took anything. And this being around is not enough. None of the property that was taken was found on him. I'm going to go back to the shoes. But, in fact, no money, no knife was ever found on him.

The shoes are a question. No doubt about that. And, in fact, in the instruction the law says that the state need not prove who the shoes belong to. But the state does need to prove that they were stolen. They can't prove that because no one's come forward to say, hey, my shoes were stolen. There's no showing of theft for the shoes. So he has those. And it's kind of a conundrum. He has the items, the things that no one says were stolen. So the state can't prove theft.

The things that people say were stolen, he doesn't have. The state said it's coincidence. That's true, coincidence is a funny thing.

Guilty of criminal trespass only.

RP at 255. Defense counsel later continued:

But none of those things [items alleged stolen] were recovered on him. And again, for one final time, these things are ownerless. They're

7

> orphans. He should not be convicted for that sort of groundless claim of theft.
>
> Find him guilty, sure. Of criminal trespass, criminal trespass and criminal trespass. But there's no showing, no proof beyond a reasonable doubt of theft. What they have is coincidence. Coincidence and ownerless property. That's not enough.

RP at 258. The State's counsel made no objection to defense counsel's comment: "Find him guilty, sure. Of criminal trespass, criminal trespass and criminal trespass." RP at 258. During rebuttal closing argument, the prosecuting attorney encouraged the jury to convict David Lewis of three counts of burglary and two counts of theft, but made no mention that the jury instruction did not allow a conviction of the lesser included offense of criminal trespass for counts two and three of burglary.

The jury acquitted David Lewis of both theft counts. The jury found David Lewis not guilty on the first burglary count but guilty of the lesser included offense of first degree criminal trespass. The jury found Lewis guilty on the two second degree burglary counts for the entries on December 19.

On the two convictions for burglary, the trial court sentenced David Lewis to a prison-based drug offender alternative sentence of nineteen months total confinement and nineteen months of community custody thereafter. The trial court sentenced Lewis to three hundred and sixty-four days suspended for the criminal trespass conviction. The sentencing court imposed two community custody conditions: (1) a mental health evaluation, and (2) a prohibition on the use or possession of controlled substances

8

without a physician's prescription. The trial court entered no finding that Lewis suffered from a mental health illness.

## LAW AND ANALYSIS

David Lewis contends that trial defense counsel faultily failed to request instructions on the lesser included offense of criminal trespass for counts two and three of second degree burglary, which charged him with misconduct on December 19, 2015. Lewis argues that, because some facts supported a finding that he lacked intent to commit a crime against persons or property inside the club and since criminal trespassing qualifies as a lesser included offense of second degree burglary, he was entitled to such an instruction. He emphasizes that the jury convicted him of criminal trespass, not second degree burglary, for his one ingress into the Ephrata Athletic Club on December 18. Therefore, he contends that the jury would probably have acquitted him of the two charges of burglary and convicted him instead on the lesser charges of criminal trespass for the two entrances on December 19. Lewis does not appeal his one conviction for criminal trespass.

### Lesser Included Jury Instruction

For an accused to show ineffective assistance of counsel for failing to request a jury instruction, the accused must establish entitlement to the instruction. *State v. Johnston*, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007). Generally we first review whether the trial court should have, assuming David Lewis requested one, delivered a lesser

9

included jury instruction for the charges arising from the December 19 entries. Nevertheless, because we conclude that Lewis suffered no prejudice by the lack of such an instruction, we need not and do not address this issue on appeal. We assume for argument sake that Lewis was entitled to the instruction.

## Ineffective Assistance of Counsel

We move to the question of whether trial counsel ineffectively assisted as counsel when failing to ask for jury instructions on the lesser included offense of criminal trespass for the trespasses into the Ephrata Athletic Club on December 19. Remember that the trial court gave a lesser included offense instruction for the first count involving the entry into the club on December 18. Therefore, in our analysis, we must consider factors distinguishing the one entrance on December 18 from the two entries on December 19.

We note that defense trial counsel asked the jury to convict David Lewis of the lesser crime of criminal trespass for the December 19 ingresses, when no jury instruction allowed for the lesser convictions. Therefore, this appeal involves more than a mere failure to request a lesser offense instruction. It involves counsel asking the jury to convict his client on a lesser offense not explained to the jurors in an instruction and not included as an option in the verdict form.

The Sixth Amendment to the United States Constitution guarantees an accused the right to legal counsel in criminal trials. Washington's Constitution also grants an accused

10

in a criminal prosecution the right to appear by counsel. WASH. CONST. art. I, § 22. The right to counsel under the state and federal constitutions are coextensive. *State v. Long*, 104 Wn.2d 285, 288, 705 P.2d 245 (1985).

The constitution secures the accused more than an attorney who sits next to him during trial. To meaningfully protect an accused's right to counsel, the constitution demands effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The law recognizes the right to effective assistance not for its own sake, but for its effect on the ability of the accused to receive a fair trial. *State v. Webbe*, 122 Wn. App. 683, 694, 94 P.3d 994 (2004).

We note that, unlike in many other reported decisions, David Lewis' trial counsel informed the trial court that he would discuss with Lewis the question of whether to ask for the lesser included jury instruction for counts two and three. Thereafter, the prosecuting attorney suggested to the trial court that the State and Lewis agreed not to seek the jury instruction for the two ingresses on December 19. Defense counsel did not expressly confirm that he discussed the decision with Lewis, and counsel did not expressly affirm an agreement with the State. Nevertheless, counsel did not disagree with the prosecuting attorney's representation and did not ask for the lesser included jury instruction for the last two counts of second degree burglary.

Even assuming the probability that David Lewis either made the decision to withhold a request for the lesser included instruction or agreed with counsel's decision,

11

the law does not preclude Lewis from asserting ineffective assistance on appeal. In *State v. Grier*, 171 Wn.2d 17, 246 P.3d 1260 (2011), *disagreed with on other grounds*, *Crace v. Herzog*, 798 F.3d 840 (9th Cir. 2015), defense counsel originally proposed lesser included offense jury instructions for manslaughter to the charge of second degree murder. Later counsel withdrew the lesser included instructions without explanation. He stated, however, that he discussed the decision with his client and the client agreed with the decision.

On appeal, in *State v. Grier*, Kristina Grier asserted that her trial counsel performed deficiently when withdrawing the jury instructions. In response, the State argued that, because Grier agreed to forgo the instructions and because the decision to withhold lesser included instructions resides with the defendant, not her attorney, Grier cannot fault her attorney. The Supreme Court reviewed rules of professional conduct and disagreed that the decision as to whether to seek a lesser included jury instruction rested solely with the defendant. Instead, the choice of trial tactics and the methodology employed consistent with those tactics rests in the attorney's judgment.

We now identify the test to harness in reviewing David Lewis' ineffective assistance of counsel challenge to his burglary convictions. State and federal decisions follow the teachings and rules announced in the United States Supreme Court's seminal decision of *Strickland v. Washington*, 466 U.S. 668 (1984). A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient,

12

and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. at 687. If one prong of the test fails, we need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). Therefore, we do not address whether trial counsel performed deficiently.

We turn to prejudice, the second tine of the ineffective assistance of counsel examination. The defendant must affirmatively prove prejudice. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). To make a determination of prejudice, this court considers the totality of the evidence before the jury. *Strickland v. Washington*, 466 U.S. at 695; *State v. Alcantar-Maldonado*, 184 Wn. App. 215, 233, 340 P.3d 859 (2014).

The law generally defines "prejudice," in the setting of ineffective assistance of counsel, as a "reasonable probability" that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. at 669; *In re Personal Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). The accused must show more than the errors having some conceivable effect on the outcome of the proceeding. *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *In re Personal Restraint of Lui*, 188 Wn.2d at 538. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. at 669. In other words, the likelihood of a different result must be substantial, not just conceivable. *In re Personal Restraint of Lui*, 188 Wn.2d at 539 (2017).

One might expect a burden of "reasonable probability" to require a showing by the

13

preponderance of evidence and a burden of "substantial likelihood" to demand proof

higher than a preponderance of evidence. Nevertheless, despite the misuse of the English

language, a "reasonable probability," under the law of ineffective assistance of counsel, is

lower than a preponderance standard. *Strickland,* 466 U.S. at 694; *State v. Estes,* 188

Wn.2d at 458 (2017). The standard denotes a probability sufficient to undermine

confidence in the outcome. *Strickland,* 466 U.S. at 694.

At an earlier date, the Washington Supreme Court held that the defendant bears

the burden of showing, based on the record developed in the trial court, that the result of

the proceeding would have been different but for counsel's deficient representation.

*State v. Thomas,* 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987); *State v. McFarland,* 127

Wn.2d 322, 337, 899 P.2d 1251 (1995). This standard outlines a preponderance of

evidence standard. We proceed, however, with the understanding that David Lewis, at

least under the general rules of ineffective assistance of counsel, must show something

less than a likelihood of acquittal on the two convictions for burglary in order to establish

prejudice.

The Washington Supreme Court, in *State v. Grier,* 171 Wn.2d 17 (2011), may

have ignored this general standard of prejudice, for purposes of an ineffective assistance

of counsel analysis, and established a greater burden for the accused to carry in our

context of the failure to seek a lesser included offense jury instruction. In addition to

addressing prejudice, the *Grier* court held that trial counsel did not perform ineffectively

14

when withdrawing instructions allowing a conviction on the lesser included charge of manslaughter when the State charged Kristina Grier with second degree murder. During closing statements, Grier's attorney argued that the State failed to prove beyond a reasonable doubt that Grier was armed when the victim was shot, let alone that Grier shot the victim intentionally. In the alternative, counsel argued that Grier shot the victim in self-defense. No one testified that Grier shot the victim. Evidence showed the victim to have started fights with others during the evening of his death. The *Grier* court reasoned that, under either of defense counsel's theories, acquittal on murder charges was a "real possibility, albeit a remote one." *State v. Grier*, 171 Wn.2d at 43. Thus, Grier and her defense counsel could have reasonably believed an all or nothing strategy to be the best approach to gain an outright acquittal. The holding in *Grier* may be that, if acquittal on charges for the greater crime is a "real possibility," trial counsel commits no error by withholding a request for a lesser included offense instruction. The State, in responding to an ineffective assistance of counsel challenge, need not contend that acquittal on the greater charge constituted a probability, but only argue that exoneration was a possibility.

The state high court also held that Kristina Grier did not establish prejudice, but the analysis of the court conflated the question of whether trial counsel performed unreasonably. The court cited foreign decisions that held that the decision not to tender lesser included offenses constituted a legitimate tactical decision. More importantly, the high court adopted the reasoning that, since the jury found the defendant guilty of the

15

greater crime beyond a reasonable doubt, the jury, if given an opportunity, would not

have convicted of the lesser crime. The reviewing court must assume that the jury will

act according to the law and convict only if it finds guilt beyond a reasonable doubt.

Therefore, according to *Grier*, the defendant does not establish prejudice if convicted of

the greater crime because he would have otherwise been convicted even if the trial court

afforded the jury the opportunity to convict on a lower charge.

In *Crace v. Herzog*, 798 F.3d 840 (9th Cir. 2015), the United States Ninth Circuit

Court of Appeals recently rejected the Washington Supreme Court's analysis of prejudice

in the setting of a lesser included offense instruction. David Lewis asks this court to

overrule *State v. Grier* and adopt *Crace*'s different test of prejudice.

To understand the federal appeals court's decision in *Crace v. Herzog*, we must

first read a portion of the Washington Supreme Court's decision in response to Hoyt

Crace's personal restraint petition and discern why the Supreme Court reversed the Court

of Appeals' decision granting Crace's petition. The Supreme Court wrote:

> Although Crace need not show more prejudice on collateral attack
> than on direct appeal, he must of course satisfy the *Strickland* test in order
> to have his personal restraint petition granted. . . . We conclude that Crace
> cannot show prejudice under *Strickland* and therefore do not address the
> question of whether his counsel's performance was deficient.
>
> In holding Crace met his burden to demonstrate prejudice, the Court
> of Appeals did not have the benefit of our decisions in *Grier* and [*State v.
> Breitung*, 173 Wn.2d 393, 267 P.3d 1012 (2011)]. There, we rejected
> claims of ineffective assistance of counsel based on counsel's failure to
> seek jury instructions on lesser included offenses. With respect to
> prejudice, we noted in *Grier* that the court must assume "that the jury

16

would not have convicted [the defendant] unless the State had met its burden of proof." And, we must assume that "the availability of a compromise verdict would not have changed the outcome of [the] trial." (quoting *Strickland*'s admonishment that "'a court should presume . . . that the judge or jury acted according to the law.'")

Assuming without deciding that counsel was deficient, consistent with *Grier*, we cannot say in all reasonable probability that counsel's error—failure to seek the lesser included offense—contributed to Crace's conviction on attempted second degree assault. There was sufficient evidence from which a juror could conclude Crace committed this offense. Evidence established he intended to cause Deputy Hardesty fear and apprehension. . . . Indeed, if failing to request the lesser-included instruction was deficient performance, it occurred during an otherwise strategic and tactically driven presentation by counsel. In light of the presumptions we recognized in *Grier,* it would be difficult to show prejudice in such a context, and Crace has failed to do so here.

*In re Personal Restraint of Crace*, 174 Wn.2d 835, 847-48, 280 P.3d 1102 (2012) (alteration in original) (footnote omitted) (internal citations omitted). Note that the Washington Supreme Court blends a tactically driven presentation by counsel with lack of prejudice. The court also conflates the question of sufficiency of evidence with prejudice.

The Ninth Circuit Court of Appeals rejected the Washington Supreme Court's opinion in *Crace v. Herzog*. Hoyt Crace filed a petition for habeas corpus in the Western District of Washington United States District Court. The district court granted the petition, and the State appealed. The ninth circuit affirmed. The court wrote:

The Washington Supreme Court's methodology is a patently unreasonable application of *Strickland*. . . . *Strickland* did instruct reviewing courts to presume that trial juries act "according to law," but the Washington Supreme Court (both in *Grier* and in this case) has read far

17

more into that instruction than it fairly supports and, as a result, has sanctioned an approach to *Strickland* that sidesteps the reasonable probability analysis that *Strickland*'s prejudice prong explicitly requires.

In counseling reviewing courts to presume that juries act according to law, the *Strickland* Court sought to prohibit lower courts from basing findings of prejudice on the possibility of freak acts of "lawless[ness]" by judges and juries that are outside the ordinary course of criminal justice. The passage immediately following the language quoted in *Grier* explains this point:

> An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed.

The Washington Supreme Court's decisions in *Grier* and in this case overextended the foregoing principle. That principle forbids a reviewing court from finding prejudice by speculating that, if the defendant is permitted to roll the dice again, the jury might convict on a lesser included offense merely as a means of jury nullification, without regard for whether that verdict is consistent with the evidence. But it does not require a court to presume—as the Washington Supreme Court did—that, because a jury convicted the defendant of a particular offense at trial, the jury could not have convicted the defendant on a lesser included offense based upon evidence that was consistent with the elements of both. To think that a jury, if presented with the option, might have convicted on a lesser included offense is not to suggest that the jury would have ignored its instructions. On the contrary, it would be perfectly consistent with those instructions for the jury to conclude that the evidence presented was a better fit for the lesser included offense. The Washington Supreme Court thus was wrong to assume that, because there was sufficient evidence to support the original verdict, the jury *necessarily* would have reached the same verdict even if instructed on an additional lesser included offense.

As the Supreme Court has recognized in a related context, a jury presented with only two options—convicting on a single charged offense or acquitting the defendant altogether—"is likely to resolve its doubts in favor of conviction" even if it has reservations about one of the elements of the charged offense, on the thinking that "the defendant is plainly guilty of

18

some offense." It is therefore perfectly plausible that a jury that convicted on a particular offense at trial did so despite doubts about the proof of that offense—doubts that, with "the availability of a third option," could have led it to convict on a lesser included offense. Making this observation does not require us to speculate that the jury would have acted "lawless[ly]" if instructed on an additional, lesser included offense or to question the validity of the actual verdict. Rather, it merely involves acknowledging that the jury could "rationally" have found conviction on a lesser included offense to be the verdict best supported by the evidence.

. . . .

Nothing in *Strickland*, therefore, forbids courts from considering the possibility that a jury would have convicted on a lesser included offense if given the option to do so. Indeed, just the opposite is true: in ineffective assistance cases involving a failure to request a lesser-included-offense instruction, *Strickland requires* a reviewing court to assess the likelihood that the defendant's jury would have convicted only on the lesser included offense. . . .

The Washington Supreme Court in essence converted Strickland's prejudice inquiry into a sufficiency-of-the-evidence question—an entirely different inquiry separately prescribed by *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

*Crace v. Herzog*, 798 F.3d at 847-49 (emphasis and alterations in original) (internal citations omitted).

After rejecting the Washington Supreme Court's version of prejudice, the federal appellate court, in *Crace*, conducted a de novo review of the trial testimony to determine if Hoyt Crace suffered prejudice when his counsel failed to ask for a lesser included offense instruction of unlawful display of a weapon to the greater charge of assault. Assault, but not unlawful display, required proof of intent. The court found prejudice because Crace testified that, when he grabbed his sword and ran into the street, he had no intent to harm anyone, but was frightened because imagined pursuers wished to kill him.

19

Crace also presented testimony by a psychologist, Dr. Vincent Gollogly, who explained that Crace's mental capacity had been so impaired on the night of August 16 that he was not able to realize the nature of his conduct. The federal court concluded that a "jury could rationally choose to convict Crace *only* of unlawful display of a weapon." *Crace v. Herzog*, 798 F.3d 850-01 (emphasis in original). The court further wrote: "We think it *reasonably probable* that, if given an additional option, the jury would have convicted Crace only of unlawful display of a weapon." *Crace v. Herzog*, 798 F.3d 851 (emphasis added). "This probability is 'sufficient to undermine [our] confidence in the outcome' of the trial." *Crace v. Herzog*, 798 F.3d at 851.

A Washington Court of Appeals lacks authority to overrule a Washington Supreme Court decision contrary to David Lewis' request. *Godefroy v. Reilly*, 146 Wash. 257, 259, 262 P. 639 (1928); *State v. Lee*, 147 Wn. App. 912, 920 n.2, 199 P.3d 445 (2008). At the same time, we recognize that a federal court may eventually, on collateral review, impose its view of ineffective assistance of counsel under principles of the United States Constitution. We conclude, however, that we need not choose between the definition of prejudice under *Grier* or under *Crace*. Even under the laxer test found in *Crace*, Lewis cannot show prejudice.

After analyzing the entire trial evidence, we note that the undisputed evidence established David Lewis entered the Ephrata Athletic Club without permission on the three occasions he stealthily penetrated the club's security. He unquestionably

committed a crime each time. We conclude that the jury likely did not convict Lewis of second degree burglary for his entry on December 18 and instead convicted him of criminal trespass, because no one saw him with any stolen objects and the security footage did not show him with any contraband.

Some evidence showed that David Lewis entered the club on December 19 to escape the weather, but the jury did not believe this testimony. The overwhelming evidence with regard to the December 19 entries showed Lewis pilfered property. After his afternoon entry, he exited wearing a different jacket and the jacket contained a bulge. Lewis provided no explanation for the presence of the other jacket, other than that some phantom person may have gifted him the jacket or the jacket waited for his retrieval for two years in an alleged lost and found bin. Although Lewis did not carry the burden, before the jury, of disproving the crime, our confidence in the verdict is not shaken if the State presented strong evidence of the crime and Lewis lacked a sufficient countering explanation.

Following his December 19 evening entry, Lewis attempted to leave the club with three pairs of athletic shoes and another coat. He provided no explanation for the handling of the apparel. Lewis' argument that the apparel belonged to no one falls short because he provided no testimony that he knew no one claimed the shoes and coat. Also, the State is required to prove only that the taken property belonged to someone other than the accused, not who owned the items. *State v. Lee*, 128 Wn.2d 151, 159, 904 P.2d 1143

21

(1995).

David Lewis' exoneration on the theft charges does not show he did not seek to steal inside the Ephrata Athletic Club. The State did not need to show that Lewis actually stole property, only that he intended to commit a crime. Lewis also never supplied a sufficient explanation for being inside the athletic club or why he locked himself inside a bathroom stall for twenty minutes. The totality of the evidence does not undermine our confidence in the second degree burglary convictions.

## Mental Health Evaluation

Since we affirm David Lewis' convictions, we must address his assignments of error with regard to his sentencing. David Lewis first contends that the trial court failed to make the requisite findings before ordering him to undergo a mental health evaluation as part of his community custody. The State concedes error and admits the trial court did not enter a proper finding. Nevertheless, a physician has already evaluated Lewis, rendering the community custody condition a harmless error.

## Controlled Substances

David Lewis also contends that the trial court erred in limiting his use or possession of controlled substances to only those substances provided by a physician. Under RCW 9.94A.703(2)(c), a trial court may order an offender to abstain from possessing or consuming controlled substances aside from "lawfully issued prescriptions." Nevertheless, the law does not limit authorization to issue prescription to

22

No. 34347-2-III
*State v. Lewis*

physicians. Dentists, physician assistants, and advanced registered nurses, among others, may also prescribe controlled substances. The State concedes error and admits the order should be written to mirror the language of RCW 9.94A.703(2)(c). Both the appellant and respondent agree that the court should remand so that the language of Lewis' community custody matches the pertinent statute's words.

## CONCLUSIONS

We affirm David Lewis' convictions on counts two and three for second degree burglary. We remand the case for resentencing. On resentencing, the trial court should modify the community custody condition to read that Lewis may not use or possess controlled substances unless prescribed by a licensed health care professional authorized to prescribe medications.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____                _____
Lawrence-Berrey, J.                             Pennell, J.

23