[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Lloyd*, Slip Opinion No. 2022-Ohio-4259.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4259

THE STATE OF OHIO, APPELLEE, *v.* LLOYD, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Lloyd*, Slip Opinion No. 2022-Ohio-4259.]**

*Criminal law—Ineffective assistance of counsel—Deficient performance—Felony murder and felonious assault—Defense counsel's argument identifying victim's death as a "serious physical harm" did not reflect a misunderstanding of the law—Defense counsel's failure to request jury instructions that defendant was not entitled to was not ineffective—Court of appeals' judgment affirmed.*

(No. 2021-0860—Submitted June 14, 2022—Decided December 1, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,
No. 109128, 2021-Ohio-1808.

_____

**DEWINE, J.**

**{¶ 1}** Cronie W. Lloyd was convicted of felony murder for a one-punch homicide. He argues that his trial counsel was ineffective for failing to ask for jury

instructions on lesser-included and inferior-degree offenses. And he contends that the usual presumption that an attorney's decision to take an all-or-nothing approach is a matter of trial strategy should not apply here, because his attorney misunderstood the elements of felony murder.

{¶ 2} As evidence that his attorney misunderstood the law, Lloyd points to statements she made in closing argument to the effect that Lloyd could not have known that one punch could *kill* the victim. Lloyd contends that because felonious assault requires only an intent to cause serious physical harm, these statements evince a misunderstanding of the law. And under Lloyd's theory, had his attorney not misunderstood the law, she would have asked for instructions on lesser-included and inferior-degree offenses.

{¶ 3} We are not convinced. Viewing counsel's closing argument as a whole, we conclude that Lloyd has failed to demonstrate that his counsel misunderstood the law. Moreover, Lloyd has not established that he would have been entitled to the additional jury instructions had his attorney requested them. Lloyd's attorney cannot be ineffective for failing to make a fruitless request. As a result, we affirm the decision of the court of appeals, which upheld Lloyd's conviction.

## I. BACKGROUND

{¶ 4} Cronie Lloyd and Gary Power were involved in a fender bender early one morning while both men were leaving a bar in their separate vehicles. They pulled into a gas station to inspect the damage. Security cameras show that Lloyd pulled in behind Power, exited his Jeep, and walked slowly up to Power's vehicle, flicking his cigarette to the ground as he approached. The two men looked at the damage together and exchanged words. Then, without warning, the 47-year-old Lloyd punched the 83-year-old Power in the face, causing him to crash to the ground, strike his head on the concrete, and immediately lose consciousness. Lloyd

stood over Power and stared down at him, searched Power's pockets, and then calmly walked back to his Jeep and drove away. Power died from his injuries.

## A. Closing Arguments

{¶ 5} The case proceeded to trial on charges of felony murder and felonious assault. At the close of evidence, the court instructed the jury on the law, including the elements of the offenses. The court made clear that for Lloyd to be convicted of felony murder, the state had to prove that he caused the death of Power as a proximate result of committing or attempting to commit felonious assault. The court then explained that to find Lloyd guilty of felonious assault, the jury would need to find that he "knowingly caused serious physical harm" to Power.

{¶ 6} When it came time for Lloyd's attorney to present her closing argument, she advanced two theories. First, she argued that Lloyd was not guilty because he did not "knowingly" cause serious physical harm. She reminded the jury that "knowingly" was an element of the offense and asserted that Lloyd could not have known that one punch would lead to Power's death. She explained: "[M]y client, he didn't hit Mr. Power with a bat. He didn't hit him with a gun. He didn't beat him with a pole. He didn't do the obvious thing that one would think someone would do with intent to cause serious physical harm." Ending her argument, she said, "Unfortunately, he did assault Mr. Power. But he did not knowingly do so with the intent to cause death."

{¶ 7} Next, Lloyd's attorney theorized that Lloyd should be found not guilty of felony murder because there was an independent, intervening cause of Power's death. She claimed that Power may have hit his head on the concrete a second time when police officers attempted to move him, and she speculated that this second impact might have been the cause of death. "There is a reasonable doubt there," she claimed. Alternatively, she suggested that Power could have died from two doses of Narcan that paramedics administered to him in the belief that he may have

overdosed on drugs. Unconvinced, the jury found Lloyd guilty of felony murder and felonious assault.

*B. On Appeal, Lloyd Challenges his Counsel's Failure to Request*

*Additional Jury Instructions*

{¶ 8} Lloyd appealed to the Eighth District Court of Appeals, claiming, among other things, that he was "denied the effective assistance of counsel where trial counsel failed to request a jury instruction on the lesser-included offenses of assault and involuntary manslaughter" and "on the inferior offense[s] of aggravated assault and voluntary manslaughter." On appeal, Lloyd conceded that the evidence supported convictions on lesser-included or inferior-degree offenses, and he asserted that trial counsel should have "provide[d] the jurors with a meaningful middle ground verdict." He claimed that his attorney made the decision to go all-or-nothing because she misunderstood the law, and that had she understood the law, she would have requested instructions on the other offenses. Lloyd also asserted that the trial court committed plain error by not giving these instructions sua sponte.

{¶ 9} The lesser-included offenses identified by Lloyd were involuntary manslaughter and misdemeanor assault. To find a defendant guilty of misdemeanor assault, a jury must find that a defendant "knowingly cause[d] or attempt[ed] to cause physical harm to another." R.C. 2903.13(A) and (C)(1). When a misdemeanor assault results in death, a defendant is guilty of involuntary manslaughter. R.C. 2903.04(B) and (C).

{¶ 10} The inferior-degree offenses identified by Lloyd were aggravated assault and voluntary manslaughter. An aggravated assault occurs when a defendant knowingly causes serious physical harm in response to a serious provocation by the victim. R.C. 2903.12(A)(1). When an aggravated assault results in death, a defendant is guilty of voluntary manslaughter. R.C. 2903.03(A).

**{¶ 11}** The court of appeals rejected the contention that Lloyd's attorney provided ineffective assistance by failing to request jury instructions on the lesser-included and inferior-degree offenses. 2021-Ohio-1808, ¶ 22, 35. It presumed that his attorney's decision not to seek those instructions was part of an all-or-nothing trial strategy. *Id.* at ¶ 31-32. Trial strategy, it explained, should not be second-guessed by the court, but rather is a decision left to the defense attorney after consultation with his client. *Id.* at ¶ 32, 34.

**{¶ 12}** The court of appeals also concluded that "the trial court did not commit error, plain or otherwise," by not sua sponte instructing the jury on the lesser-included offenses. *Id.* at ¶ 44. It reached a similar conclusion as to the inferior-degree offenses. *Id*. at ¶ 45. The court of appeals explained that lesser-included- and inferior-degree-offense charges are warranted only when a court finds that "there is sufficient evidence to allow a jury to reasonably reject the greater offense and find the defendant guilty on the lesser-included or inferior offense." *Id.* at ¶ 25, citing *State v. Shane*, 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272 (1992). The court said that when a victim suffers serious physical harm (e.g., death), rather than mere physical harm, the charge of misdemeanor assault is not appropriate. *Id.* at ¶ 44, citing *State v. Koch*, 2019-Ohio-4099, 146 N.E.3d 1238, ¶ 84 (2d Dist.), *State v. Thornton*, 2d Dist. Montgomery No. 20652, 2005-Ohio-3744, ¶ 48, and *State v. Brisbon*, 8th Dist. Cuyahoga No. 105591, 2018-Ohio-2303, ¶ 27. And, because a conviction on involuntary manslaughter would have depended on a conviction for misdemeanor assault, there was no basis to provide an involuntary-manslaughter instruction. *Id.* Similarly, the court found that an instruction on aggravated assault was not warranted, because that offense requires evidence of serious provocation by the victim—evidence that was entirely absent in this case. *Id.* at ¶ 45. And because an instruction on aggravated assault was not warranted, neither was an instruction on voluntary manslaughter.

**{¶ 13}** Lloyd appealed to this court, asking us to review (1) whether a person could knowingly cause serious physical harm with one punch, and (2) whether the presumption of reasonable trial strategy could be rebutted by evidence that trial counsel misunderstood the elements of the charged offense. We accepted jurisdiction over the second question only.[1] 164 Ohio St.3d 1446, 2021-Ohio-3336, 173 N.E.3d 1237.

## II. ANALYSIS

**{¶ 14}** In all criminal prosecutions, the accused has the right to "the Assistance of Counsel for his defence." Sixth Amendment to the U.S. Constitution. Inherent in the right to counsel is "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn. 14. Attorneys are "strongly presumed to have rendered adequate assistance." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, that presumption can be overcome.

**{¶ 15}** The "benchmark" for determining ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. To establish that an attorney's conduct fell below the benchmark, the defendant must satisfy a two-part test. The defendant first must show that "counsel's performance was deficient." *Id.* at 687. The defendant then "must show that the deficient performance prejudiced the defense." *Id.*

**{¶ 16}** Courts determine deficient performance by asking whether the attorney's conduct "fell below an objective standard of reasonableness." *Id.* at 688.

---

1. In his briefing to this court, Lloyd goes beyond the issue we accepted for review and the arguments he raised below by arguing that his attorney should have advised him to enter a guilty plea but that her misunderstanding of the law likely impaired her ability to properly counsel him on that decision. We are limited, however, to consider only the proposition of law we accepted and only the arguments raised below. *State v. Phillips*, 27 Ohio St.2d 294, 302, 272 N.E.2d 347 (1971). Thus, we will not consider Lloyd's guilty-plea argument.

The reasonableness of the attorney's conduct must be judged based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Only when the attorney's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" has the attorney engaged in deficient performance. *Id.* at 687.

{¶ 17} When the alleged error concerns what could be viewed as trial strategy, courts must be "highly deferential" to the attorney's strategic decisions. *Id.*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. After all, each case is unique and capable of being argued in a variety of ways. *See id.* at 689-690. Nobody can predict the future, and "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. Hindsight is 20/20 after all. Accordingly, the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 18} To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The error must be so serious as to "undermine confidence in the outcome." *Id.*

A. *The Record Does not Establish that Lloyd's Counsel Was Deficient*

{¶ 19} The premise of Lloyd's argument is that his attorney misunderstood the law and, as a result, failed to ask for lesser-included- and inferior-degree-offense instructions. There are two problems with this argument, both of which are fatal to Lloyd's appeal. First, the record does not demonstrate that Lloyd's counsel misunderstood the law. Second, Lloyd would not have been entitled to the instructions had his counsel asked for them.

**1. Lloyd has not shown that his attorney misunderstood the law**

{¶ 20} There is caselaw to support the notion that an attorney's failure to know the law can cause blunders that amount to deficient performance. In *Williams v. Taylor*, defense attorneys failed to investigate the defendant's background before sentencing, "not because of any strategic calculation but because they incorrectly thought that state law barred access to such records." 529 U.S. 362, 395, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The United States Supreme Court recognized that this failure to investigate, which left undiscovered substantial evidence of childhood trauma and other mitigating evidence, constituted deficient performance. *See id.* at 395-396. Other courts have also recognized that an attorney's failure to know the law can lead to deficient performance. *See, e.g.*, *Smith v. Dretke*, 417 F.3d 438, 442 (5th Cir.2005) ("failing to introduce evidence because of a misapprehension of the law is a classic example of deficiency of counsel"); *People v. Pugh*, 157 Ill.2d 1, 19, 623 N.E.2d 255 (1993) ("counsel's advice, based upon a misapprehension of the law, fell outside the range of competence demanded of attorneys in criminal cases").

{¶ 21} But we are not convinced that Lloyd's attorney misunderstood the law. In arguing that his attorney did not understand the elements of the felonious-assault offense upon which the felony-murder charge was predicated, Lloyd zeroes in on several statements that she made in closing argument. Specifically, his attorney said, "[T]here is no way that Mr. Lloyd could have knowingly been aware that hitting someone with one punch would cause the death of that individual." According to Lloyd, this statement and others like it are proof that his attorney did not know the elements of the crime charged, because the state needed only to prove that Lloyd knowingly caused serious physical harm to the victim. The problem is that this interpretation does not take into account the totality of counsel's closing argument.

{¶ 22} In this case, the serious physical harm that occurred *was* the victim's death. One way of looking at counsel's statement that Lloyd could not have known that one punch would have killed the victim is that she was simply specifying the serious physical harm that was alleged to have occurred.

{¶ 23} Imagine that instead of killing the victim, Lloyd's punch broke his nose. Rather than use the phrase "serious physical harm," Lloyd's attorney could have said: "My client could not have known that one punch would break the victim's nose." It appears to us that this is what was going on here—Lloyd's attorney was simply using a more precise description of the serious physical harm that occurred. And one can understand why she might want the jury to focus on the precise harm that occurred here—no reasonable jury would conclude that Lloyd did not know that a hard-thrown punch to Power's face would cause serious physical harm, but a jury could easily conclude that Lloyd did not know his punch would kill Power. So, Lloyd's counsel had good reason to focus the jury on the specific serious physical harm that occurred here, rather than serious physical harm in the abstract.

{¶ 24} Indeed, other parts of closing argument demonstrate that Lloyd's attorney fully understood the elements of the felonious-assault charge. During closing, counsel also argued to the jury that Lloyd did not knowingly cause "serious physical harm." If we understand defense counsel's other statements as referring to death as the specific serious physical harm that occurred, then the statements work together. In contrast, it would make little sense for counsel to say that Lloyd did not knowingly cause serious physical harm, if she believed that the state was required to show that Lloyd knowingly killed the victim. When counsel's words are read in context, then, it is evident that she understood the law and was merely identifying death as the serious physical harm that happened in this case. We thus reject Lloyd's argument that his defense attorney misunderstood the law.

**2. Lloyd's attorney was not deficient for failing to request
alternative jury instructions**

{¶ 25} Even if we were to assume that Lloyd's counsel misunderstood the law, she was not ineffective for failing to ask for instructions on the lesser-included and inferior-degree offenses. This is because Lloyd was not entitled to the alternative instructions and a request for them would have been futile.

{¶ 26} The court of appeals reviewed the trial court's failure to sua sponte provide instructions on the lesser-included offenses and concluded that the trial court did not err, "plain or otherwise." 2021-Ohio-1808 at ¶ 44. It also found that Lloyd "was not entitled to" an instruction on the inferior-degree offenses and noted that Lloyd's counsel had conceded as much in closing argument. *Id.* at ¶ 45. Lloyd did not advance a proposition of law challenging these conclusions. Thus, we are bound to accept the court of appeals' determination that under any standard, Lloyd was not entitled to the lesser-included and inferior-degree instructions. *See Meyer v. United Parcel Serv., Inc.*, 122 Ohio St.3d 104, 2009-Ohio-2463, 909 N.E.2d 106, ¶ 8, fn. 3 (explaining that the court of appeals' determination on an issue not accepted for review stood as "conclusively established"). But even if one could somehow read Lloyd's arguments before this court as challenging the court of appeals' conclusion that Lloyd would not have been entitled to the alternative instructions had he asked for them, we would conclude that the court of appeals got it right. Recall that a judge is to give instructions on lesser-included and inferior-degree offenses only when the evidence would allow a jury to reasonably reject the greater offense and find the defendant guilty on the lesser-included or inferior-degree offenses. 2021-Ohio-1808 at ¶ 25; *accord State v. Thomas*, 40 Ohio St.3d 213, 216-217, 533 N.E.2d 286 (1988); *Shane*, 63 Ohio St.3d at 632-633, 590 N.E.2d 272.

{¶ 27} For Lloyd to be entitled to the alternative instructions, there needed to be evidence that could cause a jury to reasonably conclude that he did not cause

"serious physical harm" to Power, or that he did not do so "knowingly." R.C. 2903.11(A)(1). "Serious physical harm" includes harm that requires hospitalization, incapacitates, disfigures, involves acute or prolonged pain, or carries a substantial risk of death. R.C. 2901.01(A)(5). A person acts "knowingly," in turn, when he "is aware that [his] conduct will probably cause a certain result." R.C. 2901.22(B).

{¶ 28} Here, Lloyd delivered a hard punch to the face of an 83-year-old man. There is no way that a reasonable jury would find that someone throwing this kind of punch to a senior citizen did not knowingly cause serious physical harm. Lloyd might not have known that his punch would kill the victim, but he was certainly aware that it would probably cause serious physical harm. Thus, it would have been error for the trial court to provide instructions on misdemeanor assault and involuntary manslaughter.

{¶ 29} Similarly, Lloyd would not have been entitled to an instruction on aggravated assault and voluntary manslaughter. Aggravated assault, the predicate offense for voluntary manslaughter, requires a serious provocation. And here, there is simply no evidence of provocation. The video of the incident shows nothing that would amount to serious provocation on the part of Power. Nor does any other evidence in the record suggest serious provocation. As Lloyd's counsel put it in closing argument: "Was he provoked in any way? Absolutely not." Thus, even if Lloyd's counsel had asked for these instructions, the trial court would have been compelled to deny the request.

{¶ 30} So, even if we assume that Lloyd's counsel misunderstood the law, counsel was not ineffective for failing to ask for alternative jury instructions. One cannot be ineffective for failing to make a request that would have been denied.

## B. We Do not Reach Prejudice

{¶ 31} A defendant's failure to make a sufficient showing of either prong of the *Strickland* inquiry is fatal to his claim of ineffective assistance. 466 U.S. at

697, 104 S.Ct. 2052, 80 L.Ed.2d 674. Because we conclude that Lloyd has failed to demonstrate that his counsel was deficient, we do not reach the prejudice prong of the *Strickland* inquiry.

### III. CONCLUSION

{¶ 32} Lloyd has failed to establish that his counsel was deficient in failing to ask for instructions on lesser-included and inferior-degree offenses. The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY and FISCHER, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by STEWART and BRUNNER, JJ.

––––––––––––––––

**DONNELLY, J., dissenting.**

{¶ 33} Respectfully, I dissent. The only question before this court is whether an attorney's misunderstanding of the law can rebut a presumption of sound trial strategy when analyzing the first prong of a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The majority decides that, well, actually, the defense attorney in this case didn't *really* misunderstand the law; she just spiced up her phrasing a bit here and there. After ducking the legal issue and engaging in error correction, the majority goes on to act as a 13th juror and assess the weight of the evidence against appellant, Cronie Lloyd. The majority's assessment belongs in an analysis of the prejudice prong of *Strickland* or of the proposition of law that this court declined to review.[2] It does not belong here. To make matters worse, the majority shoehorns its assessment of the weight of the evidence into its analysis of

––––––––––––––––

2. The court declined jurisdiction over Lloyd's first proposition of law, which states: "The throwing of a single punch to the head, without more, may be the reckless—not knowing—causing of serious physical harm." *See* 164 Ohio St.3d 1446, 2021-Ohio-3336, 173 N.E.3d 1237.

the law under the first prong of *Strickland*, unnecessarily blurring the line between matters of fact and questions of law.

{¶ 34} I would hold that the presumption of sound trial strategy is rebutted when, as here, that strategy entails defense counsel's repeatedly misrepresenting the law in closing argument, conceding the defendant's guilt to lesser-included offenses, and then failing to seek instructions on those lesser-included offenses even though they were the only reasonable alternative to Lloyd being convicted of the charged offenses. I would further hold that when, as here, defense counsel admits to and identifies evidence supporting the elements of a lesser-included offense, an instruction on that offense must go to the jury. Whether the evidence adequately supports the elements of the offense is a question of fact for the jury to decide. And whether the jury might have reached a different decision is a question for the prejudice prong of a *Strickland* analysis, which both the court of appeals and the majority claim to not address. *See* 2021-Ohio-1808, ¶ 32, 34-35; majority opinion at ¶ 31. I would reverse the judgment of the court of appeals related to ineffective assistance of counsel and lesser-included offenses, and I would remand the cause to the court of appeals to properly examine whether Lloyd was prejudiced by the deficient performance of his trial counsel.

**Relevant facts**

{¶ 35} Prior to Lloyd's trial for felony murder with a predicate offense of felonious assault, the parties engaged in months of negotiations for a plea agreement. It was clear from the parties' positions that they believed that a conviction for the lesser-included offense of involuntary manslaughter would be appropriate under the facts of Lloyd's case. However, the state was not willing to reduce the felonious-assault charge or omit the repeat-violent-offender

specification attached to that charge. The negotiations ultimately fell apart, primarily over the issue of sentencing consequences.[3]

{¶ 36} At Lloyd's trial, overwhelming evidence established that Lloyd punched Gary Power and that Power died as a result of that punch. The only arguable issue was whether Lloyd "knowingly caused serious physical harm" to Power.[4]

{¶ 37} Lloyd's counsel deferred making an opening statement before the state's case-in-chief, waived opening statements after the state's case, and presented no defense. Immediately after the trial court instructed the jury on the meaning of "knowingly" and "serious physical harm" for the offense of felonious assault, Lloyd's counsel presented a closing argument that repeatedly urged the jury to find Lloyd not guilty of murder because he did not "knowingly cause [Power's] death," or assault Power "with the intent to cause death." Counsel also conceded that Lloyd had committed assault. Despite this admission, and despite the trial court's repeated prompts for the parties to request additional or different jury instructions, Lloyd's counsel did not request instructions on assault and involuntary manslaughter. In less than two hours, the jury reached its verdict, finding Lloyd guilty of felonious assault and felony murder.

---

3. Although the parties disagreed over the appropriate length of a jointly recommended sentence, the trial court made it clear that it would ignore the parties' recommendation and impose a prison term of 15 years at an absolute minimum—and only as low as 15 years if the victim's family approved. The trial court's original statement to the parties regarding its intended sentence was unsurprisingly not put on the record, as the trial court shared it in a backroom discussion that would never have seen the light of day had defense counsel not brought the matter up on the record.

4. Lloyd also presented arguments at trial regarding causation and on appeal regarding instructions on the inferior-degree offenses of aggravated assault and voluntary manslaughter. Neither one of these arguments is viable in my view. Lloyd abandoned the causation argument, 2021-Ohio-1808, ¶ 53, and as the majority notes, he conceded at trial that he did not act under provocation, majority opinion at ¶ 29, foreclosing the possibility of instructions on aggravated assault and voluntary manslaughter.

**Analysis**

{¶ 38} The effective assistance of defense counsel is a critical component of a defendant's constitutional right to a fair trial. *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). To establish a claim of ineffective assistance of counsel, a defendant must (1) "show that counsel's performance was deficient," and (2) "show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. An examination under the first prong of *Strickland* looks to whether counsel's performance was reasonable in light of the totality of the circumstances. *Id*. at 688.

{¶ 39} A reviewing court must presume that counsel's conduct was reasonable and that her decisions " 'might be considered sound trial strategy.' " *Id*. at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). However, no presumption of sound trial strategy is due when counsel's actions are based on a misunderstanding of the law or otherwise have no logical justification. *See Kimmelman v. Morrison*, 477 U.S. 365, 385, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (decisions based on factual, procedural, and legal misunderstandings are not "strategy" as contemplated by *Strickland*); *Riley v. Wyrick*, 712 F.2d 382, 385 (8th Cir.1983) (presumption of sound trial strategy does not apply "[i]f a tactical choice is wholly without reason"); *United States v. Span*, 75 F.3d 1383, 1390 (9th Cir.1996) (failure to request an affirmative-defense instruction due to a misunderstanding of the law is not a "strategic decision"); *Richards v. Quarterman*, 566 F.3d 553, 569 (5th Cir.2009) (failure to request a lesser-included-offense instruction based on a misunderstanding of the law is not a "strategic decision").

{¶ 40} Counsel's failure to request instructions on lesser-included offenses can sometimes be deliberate, and it can be a valid strategic decision when pursuing what we have characterized as an "all-or-nothing defense" such as "alibi, mistaken identity, or self-defense," *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18

N.E.3d 1207, ¶ 33. However, it is unreasonable to force a jury into an all-or-nothing decision when a defendant is clearly guilty of *something*, as the jury is all but certain to find the defendant guilty. *See Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3d Cir.1988) (failing to instruct on a lesser-included offense can create the "risk that a defendant might otherwise be convicted of a crime more serious than that which the jury believes he committed simply because the jury wishes to avoid setting him free"); *Crace v. Herzog*, 798 F.3d 840, 848 (9th Cir.2015), citing *Keeble v. United States,* 412 U.S. 205, 212-213, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). It is also unreasonable to pursue an all-or-nothing defense with the goal of causing the jury to disregard or disobey the trial court's instructions regarding the elements of the charged offense. *United States ex rel. Barnard v. Lane*, 819 F.2d 798, 803-805 (7th Cir.1987).

{¶ 41} In *Barnard*, the defendant was charged in an Illinois state court with murder for fatally shooting a man during an argument in the defendant's house. *Id*. at 799-800. The defendant admitted that he shot and killed the victim, *id*. at 802, and his only viable defense would have been to assert the mitigating element of "justification," which would have triggered a requirement for a jury instruction on the lesser-included offense of manslaughter, *id*. at 803. Defense counsel declined to request a justification instruction and thereby avoided the manslaughter instruction as part of an all-or-nothing strategy that apparently banked on the jury having sympathy for the defendant and being unwilling to find him guilty of murder despite his having admitted to all of the essential elements of the offense. *Id*. at 804-805. In a subsequent habeas action, the Seventh Circuit Court of Appeals held that counsel's performance was deficient because "[t]he spectrum of counsel's legitimate tactical choices does not include abandoning a client's only defense in the hope that a jury's sympathy will cause them to misapply or ignore the law they have sworn to follow." *Id*. at 805.

**{¶ 42}** In *Crace*, the defendant was charged in a Washington state court with second-degree assault for charging at a police officer while brandishing a sword. *Crace* at 844. The defense conceded that the defendant had committed the acts charged but argued that his diminished capacity prevented him from forming the requisite criminal intent. *Id.* The jury ultimately found him guilty of the lesser-included felony offense of attempted second-degree assault. *Id.* In a petition for a writ of habeas corpus, the defendant argued that his trial counsel had been ineffective for failing to request an instruction on a lesser-included misdemeanor offense of unlawful display of a weapon. *Id.* at 845. The relevant difference between the offenses was the mens rea element. *Id.* at 850. The Ninth Circuit noted that the defense attorney admitted that he had not thought to request the instruction, and it held that such ignorance constituted deficient performance. *Id.* at 852. The Ninth Circuit further held that even if defense counsel had purposefully chosen not to request the instruction as a matter of trial strategy, it still would have been deficient performance because there was no conceivable reason for such a strategy. *Id.* at 852-853.

**{¶ 43}** In this case, Lloyd was charged with felonious assault under R.C. 2903.11(A)(1) for "knowingly caus[ing] serious physical harm" to Power, and he was charged with felony murder under R.C. 2903.02(B) for causing Power's death as a result of the felonious assault. It was indisputable that Lloyd caused serious physical harm to Power, and defense counsel conceded that Lloyd assaulted Power. This is exactly the kind of case where a jury " 'is likely to resolve its doubts in favor of conviction' even if it has reservations about one of the elements of the charged offense, on the thinking that 'the defendant is plainly guilty of some offense.' " *Crace* at 848, quoting *Keeble*, 412 U.S. at 212-213, 93 S.Ct. 1993, 36 L.Ed.2d 844.

**{¶ 44}** Lloyd's only viable defense in this context would have been to claim that he lacked the mens rea required for felonious assault and instead committed the offense of assault under R.C. 2903.13(A) or (B), which provide that "[n]o

person shall knowingly cause or attempt to cause physical harm to another * * *" and "[n]o person shall recklessly cause serious physical harm to another * * *." But instead of taking that approach, defense counsel told the jury that they should find Lloyd not guilty because he did not knowingly or intentionally *kill* Power. Defense counsel's misstatements of the law were irrelevant to the elements of felonious assault, and her credibility before the jury was surely compromised when her framing of the law differed so markedly from that of the trial-court judge, who had already accurately instructed the jury on "knowingly" and on "serious physical harm."

{¶ 45} Regardless of whether defense counsel's actions came from a misunderstanding of the law or from an attempted all-or-nothing-defense strategy, I would hold that counsel's performance was deficient under the first prong of *Strickland*.

{¶ 46} "A trial is a search for the truth as well as an effort by the state to convict." *State v. Edwards*, 52 Ohio App.2d 120, 122, 368 N.E.2d 302 (6th Dist.1975). That truth is for the trier of fact to determine after presentation of the evidence and *all* reasonable interpretations thereof. Today, the majority makes numerous assumptions about Lloyd's state of mind based on the tragic consequence of his action; but determining facts is not within the purview of this court.

{¶ 47} This court generally does not make determinations on the weight of the evidence. *State v. Cliff*, 19 Ohio St.2d 31, 33, 249 N.E.2d 823 (1969); R.C. 2953.02. However, the court has the authority to determine whether the evidence would allow reasonable minds to differ regarding the elements of an offense, and thus whether the defendant's guilt of that offense should be determined by the jury. *See Cliff* at 33; *State v. Antill*, 176 Ohio St. 61, 65, 197 N.E.2d 548 (1964).

{¶ 48} If reasonable minds could disagree whether a defendant is guilty of a lesser offense rather than a greater offense, then "the instruction on the lesser-included offense *must* be given" to the jury. (Emphasis added.) *State v. Wilkins*,

64 Ohio St.2d 382, 388, 415 N.E.2d 303 (1980). In this court's limited inquiry regarding the reasonable-minds rule, "[t]he evidence must be considered in the light most favorable to [the] defendant." *Id.* Further, "[t]he persuasiveness of the evidence regarding the lesser included offense is irrelevant." *Id.* And as the United States Supreme Court has observed, if there is "any evidence fairly tending to bear upon the issue of" the mens rea element of an offense, "it is the province of the jury to determine from all the evidence what the condition of mind was," and to determine whether the defendant committed a greater or lesser offense. *Stevenson v. United States*, 162 U.S. 313, 323, 16 S.Ct. 839, 40 L.Ed. 980 (1896).

{¶ 49} In other criminal cases involving a single punch that caused the death of another person, reasonable minds have come to different conclusions whether the defendant who threw the punch "knowingly" caused serious physical harm. *Compare State v. McFadden*, 10th Dist. Franklin No. 95APA03-384, 1995 WL 694481, *4 (Nov. 21, 1995) (holding that "it is reasonable to assume that a person would expect one punch to cause physical harm to another person" rather than "serious physical harm") *with State v. Hampton*, 8th Dist. Cuyahoga No. 103373, 2016-Ohio-5321, ¶ 28 (holding in a sufficiency analysis that punching a person in the face "suddenly and without provocation" constituted "knowingly caus[ing] serious physical harm"). Because reasonable minds can disagree whether a single punch can constitute assault rather than felonious assault, the issue is one that should be decided by those in the jury box rather than those in the ivory tower.

{¶ 50} Although the majority places great emphasis on the fact that Power was 83 years old, there is no evidence that Lloyd was aware of his age. In fact, the evidence at trial established that Power looked a lot younger than his actual age. He had a pierced ear and a full head of dark hair with peppered gray sideburns and moustache. A medical first responder gave Power two doses of Narcan "just in case he was taking drugs because he didn't look the age that he was." Lloyd and Power had both just left the same bar around 2:00 a.m. after it had closed. If

medical professionals believed Powers was the kind of person who would be running around town high on heroin at 2:00 a.m., then it is within the realm of possibility that someone might believe Powers was the kind of person who would suffer the normal results of a single punch. Additionally, there was no disparity in the size of the two men, as Lloyd and Power were almost exactly the same height and weight.

{¶ 51} Given the foregoing, I would hold that Lloyd was entitled to instructions on assault and involuntary manslaughter, and that defense counsel's failure to request the instructions constituted deficient performance. What the jury might have ultimately decided regarding the lesser-included offenses is irrelevant to the court's analysis under the first prong of *Strickland*.

{¶ 52} I would reverse the judgment of the Eighth District Court of Appeals and remand the cause to that court to properly examine whether Lloyd was prejudiced by the ineffective assistance of his trial counsel under the second prong of *Strickland*, and I therefore dissent.

STEWART and BRUNNER, JJ., concur in the foregoing opinion.

—————————

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Katherine Mullin, Assistant Prosecuting Attorney, for appellee.

Cullen Sweeney, Cuyahoga County Public Defender, and Noelle A. Powell, Assistant Public Defender, for appellant.

—————————