[Cite as *State v. Irvin*, 2025-Ohio-1082.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30152 |
| | : | |
| v. | : | Trial Court Case No. 2017 CR 03623 |
| | : | |
| LANCE IRVIN | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 28, 2025

. . . . . . . . . . .

STEPHEN P. HARDWICK, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Following the reversal of his murder conviction due to an improper self-defense instruction, Lance Irvin was again convicted of murder with an accompanying firearm specification upon retrial. Irvin appeals, raising two assignments of error. He claims that the trial court erred in providing exhibits to the jury without first admitting those

exhibits. He further claims that defense counsel rendered ineffective assistance when he failed to cite Evid.R. 616(A) while seeking to cross-examine a key State's witness regarding her pending indictment and application for intervention in lieu of conviction (ILC). For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} In April 2018, Irvin was indicted on two counts of murder with firearm specifications, two counts of felonious assault with firearm specifications, and one count of tampering with evidence. The charges stemmed from the shooting death of Jesse Redavide in the early morning hours of November 14, 2017, at the home of his older brother, Joseph Redavide.

{¶ 3} The case proceeded to a jury trial during which Irvin admitted the shooting but claimed he had acted in self-defense. The trial court instructed the jury that self-defense was an affirmative defense on which Irvin bore the burden of proof. The jury returned guilty verdicts on all charges. After merging allied offenses, the trial court sentenced Irvin to 15 years to life in prison for murder with additional consecutive sentences for an accompanying firearm specification and tampering with evidence.

{¶ 4} Irvin appealed and raised four assignments of error, one of which challenged the trial court's allocation of the burden of proof on self-defense to him. He argued that an amendment to the self-defense statute, R.C. 2901.05, had shifted the burden of proof to the prosecution, obligating the State to prove beyond a reasonable doubt that he had not acted in self-defense. Upon review, a majority of this court concluded that the amendment to R.C. 2901.05 did not apply to Irvin because it took effect on March 28,

2019, which was after he shot and killed Jesse Redavide. We affirmed his convictions. *State v. Irvin*, 2020-Ohio-4847 (2d Dist.). However, recognizing that our conclusion regarding the self-defense statute conflicted with a judgment of the Twelfth District, we sua sponte certified a conflict to the Ohio Supreme Court. The supreme court later agreed that a conflict existed.

{¶ 5} While Irvin's appeal was pending, the Ohio Supreme Court decided *State v. Brooks*, 2022-Ohio-2478, holding that the amended version of the self-defense statute applied to trials held on or after the amendment's effective date even if the offenses at issue occurred prior to that date. In October 2022, the Ohio Supreme Court vacated our judgment on the authority of *Brooks* and remanded Irvin's case to us to "conduct a harmless error analysis." *State v. Irvin*, 2022-Ohio-3587. Upon performing that review, we concluded that the trial court's erroneous allocation of the burden of proof on self-defense was not harmless error. *State v. Irvin*, 2023-Ohio-3274 (2d Dist.). We therefore reversed with respect to the murder and felonious assault charges and remanded the case to the trial court for a new trial on those counts. We affirmed Irvin's conviction for tampering with evidence, as it was unrelated to the self-defense instruction.

{¶ 6} A second jury trial was held in March 2024, and the jury again found Irvin guilty of murder and felonious assault, along with the firearm specifications. The trial court merged the offenses and specifications into Count 1 and sentenced him to 15 years to life in prison for murder, plus an additional three years for the firearm specification. The sentence was to be served consecutively to the 30-month sentence for tampering with evidence, which was affirmed in his first appeal. Irvin appeals from his conviction.

## II. Admission of Exhibits

{¶ 7} In his first assignment of error, Irvin claims that the trial court erred in providing exhibits to the jury without admitting any into evidence. Citing *State v. Patterson*, 2010-Ohio-2012 (2d Dist.), Irvin emphasizes that a "jury's exposure during its deliberations to extrinsic information, whatever its source, is an error of constitutional proportions that is grounds for setting aside the verdict, unless the exposure was harmless." *Id.* at ¶ 72, quoting *United States v. Santana*, 175 F.3d 57, 65 (1st Cir. 1999).

{¶ 8} The record does not support Irvin's contention that the jury was exposed to unadmitted evidence. On the third day of trial, the State rested its case-in-chief, subject to the admission of its exhibits. The trial court told the jury:

Ladies and gentlemen, that spoke for itself. Okay? So let's talk about the request of the State made that their exhibits be admitted, okay? So that's something I will do outside your presence, because I try not to waste your time. So that's something I will do with the lawyers when we go over all of the exhibits. There may very well be an agreement. There often is as to what exhibits will be admitted. There may be disagreement. If there is, I'll resolve it. But ultimately I'll decide what exhibits will be admitted and what exhibits will not be admitted, okay? But we'll get to that, and you can rest assured, okay?

Trial Tr. 678-679. The parties then had a sidebar discussion with the court during which defense counsel made a Crim.R. 29 motion, which was denied. Defense counsel called Irvin to testify on his own behalf and then rested, subject to the admission of his exhibits.

The State called a detective as a rebuttal witness.

{¶ 9} On the morning of March 28, 2024, while speaking with counsel without the jury present, the trial court memorialized that "[t]he parties worked together last night, and I appreciate it, getting an agreement as to the exhibit numbers and those have all been included in the instructions. The jury will be expressly told by me that this is what you get and don't ask for anything else because you ain't getting it, and which they sometimes like to do so I just try to make it clear that, no, this is it." Trial Tr. 724-725.

{¶ 10} Once the jury was brought in, the court began its bifurcated jury instructions. (It provided some instructions prior to the closing arguments and the remainder after.) The initial instructions included a lengthy discussion of what constituted evidence. Of relevance here, the court stated:

> Pursuant to the Court's ruling outside your presence, a number of exhibits and the testimony related to them have been introduced. You will have Joint Exhibit Roman Numeral I, State's Exhibits 1 through 7 inclusive, 11A and 11B inclusive, 12 through 13A inclusive, 14 through 14A inclusive, 15 through 18 inclusive, 19 through 36 inclusive, 37 through 39A1 inclusive, 40 through 52 inclusive, 50 through A – sorry – 53A and B inclusive, 54 through 57 inclusive, and Defendant's Exhibits A through C inclusive with you in the jury room as you deliberate.
>
> You may consider whether the exhibits are the same objects and in the same condition as originally taken by the police officers. You will determine what weight, if any, the exhibits should receive in light of all the

evidence.    No additional exhibits will be provided to you.

You will have with you in the jury room as an exhibit a CD admitted into evidence.   You shall consider whether the CD is a true record of what transpired at the time it was taken.   If you find that the CD is a true record – here's a typo.

. . .

Anyway, you'll have the CD with you in the jury room and it's up to you to decide whether you think it's a true record of what it purports to be, and if you think so, you'll give it what weight you think you should give it. Okay.   That was a lot more clear than what's on the paper, amazingly enough.

Trial Tr. 733-734.

**{¶ 11}** Although the trial court did not admit the parties' exhibits in the usual manner, we conclude that the exhibits itemized during the initial jury instructions were admitted by the trial court.   The court had expressed appreciation for the parties' agreement on which exhibits were admissible, and it clearly indicated that those exhibits were admitted into evidence through its statements that it would inform the jurors which exhibits would be provided to them.   The court reiterated its ruling that those exhibits had been admitted into evidence for the jury's consideration when it subsequently instructed the jury on which exhibits it could consider.

**{¶ 12}** Irvin's first assignment of error is overruled.

### II. Ineffective Assistance of Counsel

{¶ 13} In his second assignment of error, Irvin contends that defense counsel rendered ineffective assistance when he failed to properly support his request to impeach a State's witness by questioning her about her pending drug charges. Irvin contends that defense counsel should have cited Evid.R. 616(A) as authority for admitting evidence of the witness's indictment and pending motion for ILC to show bias.

{¶ 14} To establish ineffective assistance of counsel, a defendant must demonstrate both that (1) trial counsel's conduct was deficient, and (2) trial counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Lloyd*, 2022-Ohio-4259, ¶ 15. The "benchmark" for determining ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Lloyd* at ¶ 15, quoting *Strickland* at 686.

{¶ 15} Trial counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland* at 687; *Lloyd* at ¶ 16. The first prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687; *State v. Dennis*, 2022-Ohio-2888, ¶ 37 (2d Dist.). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525 (1992); *State v. Fields*, 2017-Ohio-400, ¶ 38 (2d Dist.). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*

at 689.

{¶ 16} The second prong requires a showing that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *Strickland* at 694; *Lloyd* at ¶ 18. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 17} The State's second witness was Jesse Redavide's fiancée, Savanna, who had lived with Jesse and others at a house Jesse's parents owned in Kettering. According to Savanna, in the early morning hours of November 14, 2017, she was with Jesse, their housemate, and a friend. Everyone but Savanna, who was pregnant, was sharing a bottle of vodka. After a while, Jesse indicated that he wanted to go to his brother Joey's home in Dayton. Savanna drove the group there. They watched movies and listened to music; Savanna testified that the others also drank alcohol and/or smoked marijuana.

{¶ 18} At some point, Irvin stopped by. Joey answered the door and said, "Hey, Lance." Savanna heard him from a bedroom where she was lying down and recognized his voice. After Lance greeted everyone in the living room, he and Jesse started talking to each other. At first, the two were "just talking," but the conversation became louder and more confrontational. Savanna then heard "a scuffle and a bunch of stuff banging around." Savanna continued: "That's when I said I heard Lance say that he was hurt and then he was upset and said a bunch of stuff after that that you know, he was upset and that Jesse was supposed to be his brother and that he hurt him and that he was leaving and he was getting a gun, he was coming back and he was going to merk [slang

for kill] everybody in the house, kill all of us." Trial Tr. 235. Irvin was "very loud" and "very angry" when he said it. Irvin then left the house.

{¶ 19} A short time later, Irvin returned. Joey went to answer the door, telling the others that he thought it was Irvin returning to apologize. While standing in the bedroom doorway, Savanna saw Irvin enter with a gun in his hand and point it at Jesse. Irvin told Jesse that he had said he was coming back and had meant it. Savanna saw Jesse with his hands in the air and heard him apologizing and pleading for his life. Irvin cocked the gun, so Savanna ducked down. She then heard a gunshot. Savanna looked back and saw Jesse standing there with a gunshot wound to his chest. He said, "Joey, I'm dying," and dropped to the ground. Irvin, who was visibly shaken, said, "Oh, shit," and left.

{¶ 20} During Savanna's testimony regarding Irvin's threatening Jesse with a gun, defense counsel interjected with a hearsay objection. In a sidebar discussion, the court overruled the objection. At that time, defense counsel also raised that Savanna was under indictment on drug charges and he wanted to cross-examine her about those. Trial Tr. 240. When the court responded that the indictment was not proof of anything, defense counsel stated that Savanna had a pending motion for intervention in lieu of conviction (ILC). The State objected, stating that it was unaware of a rule that allowed questioning about that. Defense counsel responded that it went to Savanna's credibility. Counsel clarified that he wanted to question her about the indictment, not ILC. The trial court overruled defense counsel's request. Trial Tr. 242.

{¶ 21} At the conclusion of the State's direct examination of Savanna, the court took a brief recess. Before the jury returned to the courtroom, the court "revisited" the

issue of whether defense counsel could cross-examine Savanna regarding her indictment on five fifth-degree felony drug charges. The court indicated that it had looked at Evid.R. 609(A), which concerns impeachment by evidence of conviction of a crime. It further commented that the evidence first had to be relevant under Evid.R. 402. The court found that evidence of Savanna's indictment was not relevant and, "what minimal relevance it has is greatly outweighed by the danger of unfair prejudice under 403(A)." It perceived the reason for bringing up her indictment was to "dirty her up." Trial Tr. 250-251.

{¶ 22} On appeal, Irvin agrees that Evid.R. 609 did not authorize cross-examination of Savanna regarding her then-pending charges, as that rule relates to impeachment with evidence of conviction. He argues, however, that a pending indictment can be admissible under Evid.R. 616(A) to show bias and that defense counsel acted deficiently by failing to rely on that rule.

{¶ 23} Cross-examination must be permitted on (1) "all relevant matters" and (2) "matters affecting credibility." Evid.R. 611(B). The phrase "matters affecting credibility" is not modified by the term "relevant" and thus does not require that the evidence be relevant to prove the elements of the charged conduct. *State v. Galvez Villavicencio*, 2023-Ohio-4072, ¶ 15 (8th Dist.). Rather, Evid.R. 611(B) simply provides that parties have the right to challenge a witness's credibility. *Id.*; *see also* Evid.R. 607(A) (permitting any party to attack a witness's credibility).

{¶ 24} Evid.R. 616, which addresses methods of impeachment, provides that "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." Evid.R. 616(A).

"Because the possible bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness . . . ." *State v. Watson*, 2015-Ohio-4517, ¶ 43 (2d Dist.), quoting *State v. Williams*, 61 Ohio App.3d 594, 597 (9th Dist. 1988). Evid.R. 616(A) thus establishes that evidence of bias has "inherent probative value." *State v. McNeal*, 2019-Ohio-2941, ¶ 61 (2d Dist.), quoting *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 171 (2001).

{¶ 25} Nevertheless, evidence of bias is subject to the limitation imposed by Evid.R. 403(A). *McNeal* at ¶ 62. That rule requires the exclusion of relevant evidence when its probative value is "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 26} Ordinarily, the credibility of a witness may be attacked by evidence of conviction of a crime, but not by proof of indictment. *State v. Durant*, 2004-Ohio-6224, ¶ 31 (2d Dist.). *See also* Evid.R. 609. However, a witness in a criminal case may be asked if he or she is under indictment for a crime "if such fact would reasonably tend to show that his [or her] testimony might be influenced by interest, bias, or a motive to testify falsely." *Id.*, quoting *State v. Hector*, 19 Ohio St.2d 167, 178 (1969). *See also State v. West*, 2014-Ohio-5143, ¶ 15 (8th Dist.).

{¶ 27} In this case, the trial court focused on whether Savanna's indictment on drug offenses was relevant to what had occurred on November 14, 2017, when the shooting occurred. Savanna had testified that she had not used alcohol and/or drugs prior to the shooting, and the trial court reasonably concluded that her pending drug

indictment was not relevant to whether Savanna had actually been sober approximately six-and-a-half years prior.

{¶ 28} Irvin argues that his defense counsel acted deficiently by failing to argue under Evid.R. 616(A) that Savanna's pending indictment was relevant to whether she was biased or had a motive to lie. He emphasizes in his reply brief that the State proposed no strategic reason for failing to cite Evid.R. 616(A). However, even assuming that defense counsel should have argued that the pending indictment and motion for ILC would reasonably tend to show that Savanna had a bias or motive to testify falsely, we cannot conclude that Irvin was prejudiced by defense counsel's failure to rely on Evid.R. 616(A).

{¶ 29} Irvin suggests that Savanna's pending indictment and motion for ILC provided her a motivation to testify more favorably for the State because the State "retained power over [Savanna's] freedom." However, Irvin cannot establish that the trial court would have allowed questioning about the indictment and motion had defense counsel made an argument under Evid.R. 616(A), much less that the jury would have acquitted him if it were made aware of her legal troubles.

{¶ 30} Further, the trial court could have reasonably concluded that the probative value of Savanna's legal situation at that time was substantially outweighed by the danger of unfair prejudice. Savanna had testified at Irvin's first trial, and any differing testimony during the retrial could have easily been tested with her testimony from the first trial. Although a witness with pending charges arguably may be motivated to testify more favorably for the State in the hopes of receiving a better outcome in his or her own case,

the court could have reasonably concluded that this situation did not exist here, particularly where defense counsel made no argument that Savanna had significantly altered her testimony from the first trial (when she was not under indictment). Indeed, unlike with a different witness, defense counsel did not use Savanna's prior testimony to impeach her.

{¶ 31} Moreover, even if defense counsel had been permitted to ask Savanna about her pending indictment and motion for ILC to show that she had a motive to lie, the State could have responded with Savanna's prior consistent testimony from the first trial to dispel any implied charge of recent fabrication or improper motive. *See* Evid.R. 801(D)(1)(b). On the record before us, we cannot conclude that the outcome of Irvin's trial would have been different had defense counsel been permitted to question Savanna about her pending indictment on drug charges.

{¶ 32} Irvin's second assignment of error is overruled.

### III. Conclusion

{¶ 33} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.