# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 58955-9-II |
| BRYAN MICHAEL OWENS,<br><br>     Petitioner. | UNPUBLISHED OPINION |

GLASGOW, J.—Bryan Owens purposefully shot and killed Corey Meyer after they were in a fistfight. The State charged Owens with second degree murder, and alternatively, first degree manslaughter. A jury convicted Owens of first degree manslaughter.

Owens brings this timely personal restraint petition to challenge his conviction. He argues that he received ineffective assistance of counsel because his defense counsel failed to request an instruction for second degree manslaughter as a lesser offense. We deny Owens' petition.

## FACTS

### I. BACKGROUND

Owens went to the Department of Licensing in September 2019. When talking to the clerk, Owens brought up his dislike for homeless people, and he mentioned that he had negative interactions with panhandlers in the past. Owens spoke about one incident in particular when he confronted a panhandler in the area about taking money from Owens' 12-year-old son.

About 30 minutes later, Owens was on his way home when he saw Mearl Benedict panhandling outside of a fast food drive-through with a sign that read, "'Anything helps.'" 4

Verbatim Rep. of Proc. (VRP) at 1560. When Owens spotted Benedict, he walked over to ask him a series of questions such as, "'Are you a veteran?'" "'Are you a part . . . of the community?'" and "'Are you homeless?'" 3 VRP at 1461-62. Benedict responded, "[W]ho the F are you asking me these questions?" *Id.* at 1462. They engaged in a heated conversation and Owens grabbed Benedict. Byron Peterson, who had stopped at the fast food restaurant for food, pulled over to intervene.

Shortly after Peterson intervened, Corey Meyer, walked up to the group "kind of aggressive" in defense of Benedict. 2 VRP at 943. Benedict then walked away and into the restaurant. Owens and Meyer began arguing "in each other's faces." 2 VRP at 708. Owens accused Meyer of being an alcoholic, and Meyer told Owens he was not and blew in both Owens' and Peterson's faces. At some point during the argument, some "spittle" came out of Meyer's mouth and landed on Owens' face. 2 VRP at 947. Owens told Meyer, "'Stop spitting on me,'" and pushed him. 4 VRP at 1582. The two then fell to the ground.

The two were wrestling on the ground, Owens was under Meyer, and Owens jabbed Meyer repeatedly in the head with his key. Peterson grabbed Meyer and pulled him off Owens. The only injury to Owens was a puncture wound on his right thumb from his own keys.

Meyer then approached Owens again and Owens was able to push him away. They were separated by about four-to-five feet. Owens pulled out his gun. Peterson was still standing near the two men. Owens held up the gun and announced, "'Stop, I have a gun.'" 4 VRP at 1609. Meyer replied, "'You pulled a f*cking gun ?" and "You p*ssy." 4 VRP at 1609,1636. Owens did not see any weapons on Meyer and it was later confirmed that Meyer was unarmed.

Meyer took a step forward, and Owens disengaged the safety on the gun and shot Meyer once in the chest. Then Owens shot Meyer a second time in the back of the head as Meyer was falling to the ground because Owens "still perceived [Meyer] as a threat." 4 VRP at 1618. Forensics

indicated that Meyer was approximately six feet away from Owens when Owens shot him. Peterson reported that after the incident, Owens said, " Nobody spits in my effing face, you know, disrespects me like that." 2 VRP at 962.

The State charged Owens with second degree murder while armed with a firearm.

## II. PRETRIAL

According to Owens, the State offered him a plea bargain for first degree manslaughter. Owens claims that when he spoke with his attorney about the plea offer, they "talked about the amount of time [he] would be facing but not about the elements of the charge." Pers. Restraint Pet. (PRP) at 21. Owens asserts that he asked his attorney "if [he] could counter with an offer of manslaughter in the second degree," but his counsel refused because "the prosecutor would not agree to this." *Id.* Owens claims he then requested that his counsel ask the court "to allow the charge of manslaughter in the second degree but [his attorney] said either the judge wouldn't allow this or he didn't feel it was necessary." *Id.* Their conversations "became heated." *Id.*

The State filed an amended information adding a first degree manslaughter charge in the alternative on the Friday before trial began on the following Monday. Owens' trial counsel objected to the State's amended information, arguing that the addition of an alternative first degree manslaughter charge "violate[d] Mr. Owens' rights to receive notice of the nature of the charges and an opportunity to present a defense." 1 VRP (Mar. 9, 2020) at 45-46. The court overruled the objection, holding that there was no evidence of undue prejudice. The trial court offered Owens' counsel a continuance to further prepare for trial but defense counsel declined.

After Owens discussed the elements of the first degree manslaughter charge with his counsel, he entered a not guilty plea. Owens alleges he once again asked his attorney to request a second degree manslaughter instruction, but his counsel refused.

III. JURY TRIAL

A.      Testimony

At trial, there was no dispute that Owens purposefully shot Meyer, killing him. Instead, in opening, defense counsel told the jury that Owens was not guilty of any crime because he "acted completely in self-defense," and had "no real choice" in shooting Meyer in order to protect himself. 1 VRP (Mar. 10, 2020) at 351.

Owens testified that he initially pulled out his gun because he felt it come loose in his holster that was tucked into his pants, and he needed to get control of the weapon. Owens also testified that his objective when he pulled out his gun was to make the fight with Meyer end.

> Q:      So when you told the detective you pulled the gun out to show it to him, to make it stop, when did you make that decision?
> A:      At the moment I pulled the weapon out, "Stop." Now the gun is in play. "Stop, I have a gun."

4 VRP at 1609. Owens told the jury that Meyer continued to argue even after he pulled the gun out, then Meyer lunged at him and Owens was "scared" and "flustered." 3 VRP 1489-90. Owens fired two shots. Owens admitted on cross-examination that he meant to shoot Meyer. Owens testified, "I did what I had to do. He lost his life." 3 VRP at 1492.

B.      Jury Instructions

The trial court instructed the jury that a person commits second degree murder when "with the intent to cause the death of another person but without premeditation, he or she causes the death of such person." Clerk's Papers (CP) at 170. A person acts intentionally "when acting with the objective or purpose to accomplish a result that constitutes a crime." CP at 171.

The trial court also instructed the jury that if it did not find Owens guilty of second degree murder, it must consider the alternative crime of first degree manslaughter. The court instructed that a person commits first degree manslaughter "when he or she recklessly causes the death of

another person." CP at 179. A person acts recklessly "when he or she knows of and disregards a substantial risk that death may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation." CP at 180.

Owens alleges that he also "wanted [an instruction for] manslaughter in the second degree" because he "felt the jury might go to the lesser degree charges," and he knew the time he "would be facing would be substantially less." PRP at 21. But Owens' counsel did not request a second degree manslaughter instruction and the trial court did not give one.

The trial court instructed the jury on self-defense. The trial court also included a pattern first-aggressor jury instruction, providing, "No person may, by an intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon kill another person." CP at 177. The defense requested additional language that "the right of self-defense is revived as to the aggressor or the provoker if that person in good faith withdraws from the combat." 4 VRP at 1653. The court denied the request for additional language because "the instructions as a whole [were] a proper statement of the law that allow[ed] [the defense] to argue [their] theory of the case" without the additional language. 4 VRP at 1654.

C.    Closing

In closing, the State argued that Owens was guilty of second degree murder and that he was the aggressor whose acts and conduct provoked the fight. The State contended that Owens created a situation in which he felt the need to pull out his gun and shoot, and the State therefore proved a lack of self-defense.

Owens' counsel responded that the shooting was lawful because it was in self-defense and Owens was not guilty of any crime:

> [Owens] didn't commit a crime. He didn't commit murder. He didn't commit manslaughter. He wasn't acting recklessly. He was acting on purpose because he

5

had to. This wasn't recklessly causing death. Don't be moved by that alternative. He didn't commit any crime. He was put in a position where he had to defend himself.

4 VRP at 1748-49.

The State argued in rebuttal that Owens intentionally pulled out his gun and shot Meyer, but at a minimum, it was reckless to be "shooting in broad daylight with the backdrop of McDonald's and the drive-thru." 4 VRP at 1763.

D.      Conviction and Sentence

The jury did not reach a verdict on the murder in the second degree charge, and it found Owens guilty of manslaughter in the first degree. The jury also found that Owens was "armed with a firearm at the time of the commission of the crime." CP at 187. The trial court imposed a sentence at the top of the standard sentencing range for the first degree manslaughter conviction and imposed an additional 60 months for the firearm sentencing enhancement, for a total of 162 months of confinement.

E.      Direct Appeal

On direct appeal, Owens argued that the trial court erroneously instructed the jury on self-defense and abused its discretion by excluding expert testimony, as well as additional grounds raised in Owens' statement of additional grounds. *State v. Owens*, No. 54910-7-II, slip op. at 1 (Wash. Ct. App. Mar. 1, 2022) (unpublished).[1] This court found that the trial court did not err and affirmed. *Id.* The direct appeal did not raise ineffective assistance of counsel based on a failure to seek an instruction on second degree manslaughter. Owens did not petition for review and his conviction became final on November 16, 2022, when we issued our mandate disposing of his direct appeal. Mandate, *State v. Owens*, No. 54910-7-II, at 1 (Wash. Ct. App. Nov. 16, 2022).

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2054910-7-II%20Unpublished%20Opinion.pdf

6

Owens timely filed this PRP on November 15, 2023. Owens asserts his counsel performed deficiently by failing to request a second degree manslaughter instruction and he asks this court to grant his PRP and order a new trial. With his petition, Owens filed a declaration stating that he asked his attorney to request a jury instruction on second degree manslaughter and that his counsel refused.

ANALYSIS

Owens argues in his PRP that his trial counsel rendered ineffective assistance by failing to propose a second degree manslaughter instruction as a lesser included offense. Owens asserts that failing to ask for this instruction fell below the minimum standard of practice. He contends that the jury would have convicted him of this lesser offense had it been presented. We disagree.

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Article I, section 22 of the Washington State Constitution and the Sixth Amendment to the United States Constitution both guarantee effective assistance of trial counsel. *State v. Grier*, 171 Wn.2d 17, 40, 246 P.3d 1260 (2011). To prevail on a claim of ineffective assistance, Owens must show that his trial counsel's "'" representation fell below an objective standard of reasonableness" and that counsel's "'deficient performance prejudiced''' Owens. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). *Strickland* requires "the defendant to overcome 'a strong presumption that the counsel [was] effective.'" *Bertrand,* 3 Wn.3d at 123 (alteration in original) (quoting *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021)). A failure to establish either prong will end our inquiry. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). "We apply the same prejudice standard to ineffective assistance claims brought in a personal restraint petition as we do on appeal." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017).

The Washington Supreme Court recently clarified that although it is difficult to show ineffective assistance of counsel for failure to request an instruction on a lesser included offense, such a claim does not fail per se. The two-pronged test from *Strickland* still applies, including its strong presumption that counsel was effective. *Bertrand*, 3 Wn.3d at 122; *Strickland*, 466 U.S. at 687.

A.     Deficient Performance

To prevail on the first prong of the *Strickland* test, a defendant must show that "'counsel's representation fell below an objective standard of reasonableness.'" *Bertrand*, 3 Wn.3d at 128 (quoting *Strickland*, 466 U.S. at 687-88). Defense counsel's performance is not deficient if it is a "'legitimate trial strategy or tactic[].'" *Bertrand*, 3 Wn.3d at 128 (alteration in original) (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)).

Owens argues that defense counsel was deficient in failing to request an instruction for second degree manslaughter, a lesser included offense of second degree murder and a lesser degree offense of first degree manslaughter. Second degree murder requires that a person "inten[ds] to cause the death of another person but without premeditation, he or she causes the death of such person." RCW 9A.32.050(1)(a); *See State v. Fluker*, 5 Wn. App. 2d 374, 398, 425 P.3d 903 (2018). Manslaughter in the first degree requires that the defendant recklessly caused the death of another person and the defendant knew of and disregarded a substantial risk that a homicide may occur and his "disregard of such substantial risk [was] a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.32.060(1); RCW 9A.08.010(1)(c); *Fluker*, 5 Wn. App. 2d at 398-99. In contrast, a person is guilty of manslaughter in the second degree when "with criminal negligence" they "cause[] the death of another person. RCW 9A.32.070(1); *Fluker*, 5 Wn. App. 2d at 399. A person acts with "criminal negligence" when they "fail[] to be aware of

a substantial risk" that a homicide may occur and their "failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(d); *Fluker*, 5 Wn. App. 2d at 399.

The decision to include a lesser offense instruction "implicates 'the wide latitude counsel must have in making tactical decisions.'" *Bertrand*, 3 Wn.3d at 131 (quoting *Strickland,* 466 U.S. at 689). There are significant risks to pursuing an "'all or nothing strategy'" and forgoing a request to include a lesser offense instruction. *Id.* (quoting *Grier*, 171 Wn.2d at 38). The absence of a less serious offense instruction can "'create a risk that the jury will convict the defendant despite having reasonable doubts.'" *Id.* (quoting *State v. Henderson*, 182 Wn.2d 734, 736, 344 P.3d 1207 (2015)).

However, the availability of a lesser offense instruction is not always beneficial. *Id.* It is a legitimate trial tactic to pursue a strategy of asserting the defendant's complete innocence. *Id.* Instructing the jury on a lesser included offense may weaken the argument of complete innocence by "suggesting that they are guilty of *some* offense, even if they are not guilty of the offense charged by the State." *Id.*

In *Grier*, a case involving second degree murder, the Washington Supreme Court held that it was not ineffective assistance to forgo a lesser offense instruction because "counsel reasonably could have believed that an all or nothing strategy was the best approach to achieve an outright acquittal." 171 Wn.2d at 43.

Here, Owens' defense counsel employed an "all or nothing strategy," arguing that Owens did not commit *any* crime because he acted in self-defense. Owens testified that he purposefully shot Meyer to protect himself and his trial counsel reiterated in closing that "[h]e didn't commit any crime. . . . He was acting on purpose because he had to." 4 VRP at 1748. Defense counsel's self-defense theory of the case would have been undermined by a jury instruction explaining that

second degree manslaughter can occur if the defendant killed a person with criminal negligence. The defense's strategy was to convince the jury that even though Owens purposefully shot Meyer, he did so to defend himself and was therefore not guilty of any crime.

The fact that the jury was already going to be given the option of finding first degree manslaughter does not do away with this strategy. Giving the jury yet another option, this one to find Owens shot at Meyers without recognizing the risk, would have been at odds with the defense strategy to convince the jury that Owens purposefully used reasonable force to defend himself. Like in *Grier*, this strategy did not fall below an objective standard of reasonableness.

B.      Prejudice

A criminal defendant is prejudiced by ineffective assistance of counsel when there is a "'reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Bertrand*, 3 Wn.3d at 124 (quoting *Kyllo*, 166 Wn.2d at 862). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Grier*, 171 Wn.2d at 34(quoting *Strickland*, 466 U.S. at 694). "*Strickland* requires courts to presume that the jury found the State met its burden of proof and lawfully reached a verdict of conviction on that basis." *Bertrand*, 3 Wn.3d at 134. However, we do not ignore the reality that juries can lawfully take a nuanced approach. Lesser degree and lesser included offenses "'can affect a jury's *perception* of reasonable doubt.'" *Id.* at 140 (quoting *Crace v. Herzog*, 798 F.3d 840, 848 (9th Cir. 2015).

To prevail on a claim of ineffective assistance of counsel based on counsel's failure to propose a lesser included offense or lesser degree offense, Owens must show that he would have been "'entitled to the instruction if it had been offered.'" *Id.* at 129 (quoting *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001)). A lesser offense instruction is appropriate only if there

is "'some evidence . . . presented—from whatever source, including cross-examination—that affirmatively establishes the defendant's theory.'" *Id.* at 143 (alteration in original) (quoting *State v. Avington*, 2 Wn.3d 245, 259, 536 P.3d 161 (2023)).

Evidence may be sufficient to only support a first degree manslaughter instruction without supporting a lesser degree instruction for second degree manslaughter. *See Fluker*, 5 Wn. App. 2d at 399-400. Manslaughter in the first degree requires that the defendant was aware of a substantial risk but disregarded it. RCW 9A.08.010(1)(c); *Fluker*, 5 Wn. App. 2d at 399. In contrast, to convict a defendant of manslaughter in the second degree they must fail to be aware of a substantial risk that a reasonable person in the same situation would have been aware of. RCW 9A.08.010(1)(d); *Fluker*, 5 Wn. App. 2d at 399. Thus, depending on the facts, the evidence could support a finding the defendant knew of and disregarded a substantial risk of homicide without also supporting a finding the defendant was unaware of a substantial risk of death. *Fluker,* 5 Wn. App. 2d at 399.

Here, there was no evidence to support a criminal negligence finding. No evidence presented at trial supports a theory that Owens committed second degree manslaughter by shooting Meyer at close range with a lack of awareness that it might kill him. Instead, Owens testified at trial that he purposefully shot Meyer in the chest to stop the fight when he took out his gun and pulled the trigger. Owens did not testify that he was unaware of the risk of death. And the nature of Owens' act—purposefully shooting someone in the chest and head with a firearm at close range—makes it highly unlikely a jury would have believed that Owens was unaware that Meyer might die as a result. Therefore, the evidence does not support Owens' theory that he committed second degree manslaughter, but not first degree manslaughter. As the evidence did not support second degree manslaughter, Owens has not shown that the trial court would have granted a request to give an instruction allowing the jury to find second degree manslaughter, nor has he shown a

reasonable probability that the jury would have found him guilty of second degree manslaughter, rather than first degree manslaughter, had they received the instruction.

In sum, Owens cannot show he was prejudiced by counsel's failure to request a second degree manslaughter instruction.

## CONCLUSION

Owens has not shown that his trial counsel's performance was deficient, nor has he shown that he was prejudiced by counsel's decision not to seek a second degree manslaughter instruction. Accordingly, Owens fails to show that his trial counsel was ineffective. Therefore, we deny his personal restraint petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

LEE, J.

VELJACIC, A.C.J.